A07A0837. CLEAVELAND v. GANNON et al.
A07A0838. ENTREKIN et al. v. GANNON et al.
(655 SE2d 662)

ELLINGTON, Judge.

William and Jane Gannon filed this medical malpractice action against Lynwood Cleaveland, M.D., John Entrekin, M.D., Deborah G. Goodrich, D.O., and Internal Medicine Associates of Rockdale, P.C., claiming that the appellants negligently failed to diagnose and treat Mr. Gannon's kidney cancer, which later metastasized. Mr. Gannon died while the suit was pending, and Ms. Gannon amended the complaint to include a wrongful death claim. The appellants moved for summary judgment on the grounds that the personal injury claims the Gannons asserted in the original complaint were barred by the statute of limitation and that Ms. Gannon's wrongful death claim

was barred by the statute of repose. The trial court denied the motions, and the appellants appeal.[1] For the reasons that follow, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant [or denial] of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citations omitted.) *Murray v. Fitzgerald Convenient Centers*, 239 Ga. App. 799 (521 SE2d 915) (1999). Defendants who move for summary judgment based on an affirmative defense such as the statute of limitation cannot rely on the absence of evidence in the record disproving the affirmative defense. OCGA § 9-11-8 (c); *Porex Corp. v. Haldopoulos*, 284 Ga. App. 510, 511 (644 SE2d 349) (2007).

Viewed in the light most favorable to the Gannons, the evidence shows the following. In June 2000, Mr. Gannon was admitted to the hospital with appendicitis and had surgery to remove his appendix. A CT scan performed during the hospitalization showed two masses in Mr. Gannon's left kidney. A urinalysis also showed that Mr. Gannon had microscopic hematuria, that is, blood in the urine which is visible only under the microscope. Mr. Gannon was referred to Dr. Cleaveland for a urological consultation regarding the hematuria.

Dr. Cleaveland met with Mr. Gannon at the hospital on June 24, 2000, the day after his surgery. Dr. Cleaveland reviewed the CT scan as well as a renal ultrasound. According to Mr. Gannon, Dr. Cleaveland told him that he had a small cyst in his kidney, which was common, and there was no need to follow up on the cyst, but that he should see his primary care physician about the hematuria after he got out of the hospital. During the consultation, Dr. Cleaveland noticed that Mr. Gannon's records indicated that Mr. Gannon had demonstrated hematuria since at least 1999, and that he had several problems that could cause hematuria, including renal insufficiency, hypertension, and gout.

Mr. Gannon followed up with his physicians at Internal Medicine Associates in July 2000. A urinalysis performed at that time showed microscopic hematuria. Dr. Entrekin did not diagnose a specific cause

---

[1] Following our grant of their applications for interlocutory appeal, Dr. Cleaveland appeals in Case No. A07A0837, and Dr. Entrekin, Dr. Goodrich, and Internal Medicine Associates appeal in Case No. A07A0838.

of the hematuria because the condition was a common problem and Mr. Gannon had multiple possible causes for the condition, including medicines he was taking and gout. Dr. Goodrich, another doctor at Internal Medicine Associates, began treatment of Mr. Gannon in April 2001, but also failed to diagnose or attempt to diagnose the precise cause of the microscopic hematuria.

During the period from July 2000 until October 31, 2002, Mr. Gannon had no pain when urinating, nor pain in his back or side. In August 2002, he saw a small amount of blood in his urine on one occasion. Ms. Gannon, who was a nurse, thought the blood might indicate an infection, so she gave Mr. Gannon an antibiotic. He took the medicine for a few days, and he did not see any blood in his urine again. Mr. Gannon also had instances of "night sweats," beginning up to five months before November 1, 2002. When asked about Mr. Gannon's night sweats, Ms. Gannon admitted that her husband had them, and could not say for how long, but she noted that Mr. Gannon had started a new job and was working late around this time.

On October 31, 2002, Mr. Gannon noticed a suspicious lump in his neck. A subsequent biopsy of the lump in his neck showed that Mr. Gannon was suffering from kidney cancer that had become metastatic.

The Gannons filed this action on October 29, 2004. In support of their complaint, the Gannons offered the testimony of one medical expert who opined that the masses detected in Mr. Gannon's kidney in June 2000 were cancerous; the cancer later progressed and metastasized; and, had the cancer been diagnosed at or before its metastasis, Mr. Gannon would have likely recovered completely. In addition, two other medical experts opined that the appellants' treatment of Mr. Gannon fell below the appropriate standard of care.

Mr. Gannon died from complications of his metastatic kidney cancer on July 9, 2005. Ms. Gannon amended the original complaint on September 7, 2005, to add a wrongful death claim.

In ruling on the appellants' motion for summary judgment, the trial court concluded that the Gannons' personal injury claims and Ms. Gannon's wrongful death claim were all timely filed both in terms of the applicable statute of limitation and the statute of repose.

1. The appellants contend that the Gannons filed their original complaint more than two years after they were injured by the appellants' alleged medical negligence and, therefore, that the trial court erred in denying the appellants' motions for summary judgment based on the medical malpractice statute of limitation.

Under OCGA § 9-3-71 (a), a plaintiff must file a medical malpractice action "within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred."

> Generally, in malpractice cases involving a misdiagnosis that resulted in a failure to properly treat a condition, the "injury" referred to in OCGA § 9-3-71 (a) occurs at the time of the misdiagnosis. This is because the patient usually continues to experience pain, suffering, or economic loss from the time of the misdiagnosis until the medical problem is properly diagnosed and treated.

(Citations omitted.) *Ward v. Bergen*, 277 Ga. App. 256, 258 (626 SE2d 224) (2006), cert. denied May 18, 2006. See also *Kaminer v. Canas*, 282 Ga. 830 (1) (653 SE2d 691) (2007) (accord). Consequently, the limitation period usually runs from the date of the misdiagnosis, not from the subsequent discovery of the proper diagnosis. *Kaminer v. Canas*, 282 Ga. at 831 (1); *Harrison v. Daly*, 268 Ga. App. 280, 283 (601 SE2d 771) (2004). According to the Gannons' complaint, the appellants negligently failed to diagnose Mr. Gannon's kidney cancer when they examined and treated him in 2000 and 2001, more than three years before the Gannons filed their complaint.

Ms. Gannon contends that the complaint was nonetheless timely filed under the "subsequent injury" exception that originated with *Whitaker v. Zirkle*, 188 Ga. App. 706 (374 SE2d 106) (1988). This limited exception to the general rule applies in cases in which the patient's injury arising from the misdiagnosis occurs subsequently, generally when a relatively benign or treatable precursor condition, which is left untreated because of the misdiagnosis, leads to the development of a more debilitating or less treatable condition.[2] Thus, the deleterious result of a doctor's failure to arrive at the correct diagnosis in these cases is not pain or economic loss that the patient suffers beginning immediately and continuing until the original medical problem is properly diagnosed and treated. Rather, the injury is the subsequent development of the other condition. When we apply OCGA § 9-3-71 (a) to such a subsequent injury case, the result is that a plaintiff must file his or her medical malpractice action within two years after the date on which the more debilitating or less

---

[2] See, e.g., *Walker v. Melton*, 227 Ga. App. 149 (1) (489 SE2d 63) (1997), cert. denied January 8, 1998 (x-ray revealed a minor vertebral fracture, which doctor failed to diagnose and treat; patient sustained a subsequent injury under *Whitaker v. Zirkle* when a spinal ligament failed, causing destabilization of the spine); *Zechmann v. Thigpen*, 210 Ga. App. 726 (3) (437 SE2d 475) (1993), cert. denied January 21, 1994 (examination revealed a minor eye condition which doctor failed to diagnose and treat; patient sustained a subsequent injury under *Whitaker v. Zirkle* when she developed neovascular glaucoma, causing destruction of the eye); *Whitaker v. Zirkle*, 188 Ga. App. at 706 (1) (after pathologist failed to properly diagnose patient's malignant mole, patient sustained a subsequent injury when she developed metastatic melanoma); see also *Kaminer v. Canas*, 282 Ga. at 837 (2) (acknowledging, but distinguishing, this line of authority).

treatable condition actually arises.[3] *Amu v. Barnes*, 286 Ga. App. 725, 730 (1) (650 SE2d 288) (2007). The date when such a subsequent injury occurs, however, is often difficult, if not impossible, to calculate precisely. Id. at 729-730 (1). Because of this, under *Whitaker v. Zirkle* and its progeny, "[w]hen a misdiagnosis results in subsequent injury that is difficult or impossible to date precisely, the statute of limitation runs from the date symptoms attributable to the new injury are manifest to the plaintiff." (Citations omitted.) *Walker v. Melton*, 227 Ga. App. 149, 151 (1) (b) (489 SE2d 63) (1997).[4]

As in *Whitaker v. Zirkle*, the injury complained of in this case is the metastasis of a cancer that allegedly would not have occurred if the cancer had been properly diagnosed and treated at the time of the alleged negligence. 188 Ga. App. at 706.[5] In moving for summary

---

[3] See *Ward v. Bergen*, 277 Ga. App. 256 (routine mammogram and biopsy revealed precancerous lesions, which doctor failed to communicate to patient and to treat; patient sustained a subsequent injury under *Whitaker v. Zirkle* when she developed metastatic breast cancer); *Staples v. Bhatti*, 220 Ga. App. 404 (1) (469 SE2d 490) (1996) (routine mammogram revealed possible breast cancer, which doctor failed to diagnose and treat; patient sustained a subsequent injury under *Whitaker v. Zirkle* when the cancer later spread to a lymph node).

[4] In his dissent, Presiding Judge Andrews supports Dr. Cleaveland's position that we should overrule *Whitaker v. Zirkle* and eliminate the new injury exception, "to the extent *Whitaker* creates a discovery rule." In Presiding Judge Andrews' view, the new injury exception cannot be squared with the plain language of OCGA § 9-3-71 (a). See also *Stafford-Fox v. Jenkins*, 282 Ga. App. 667, 673-685 (639 SE2d 610) (2006) (Andrews, P. J., concurring specially). This Court has held otherwise for nearly 20 years. As we explained in *Amu v. Barnes*, 286 Ga. App. at 730 (1), in which we expressly declined to disavow the subsequent injury exception, the *Whitaker v. Zirkle* line of authority does not create a "discovery of the injury" rule in misdiagnosis cases. Rather,

> the focus on manifested symptoms is intended to serve as a straightforward analytic tool for identifying the date when the new injury actually arose, given the difficulty, if not impossibility, in many cases of accurately pinpointing that date, given that the new injury arises at some time between the misdiagnosis and the correct diagnosis, when the patient (is) not experiencing symptoms. Hence, the subsequent injury exception does not disregard OCGA § 9-3-71 (a), but rather attempts to reconcile the statute's "date of injury" language with the fact that it is often difficult or impossible in the misdiagnosis context to calculate precisely when the new injury arose.

*Amu v. Barnes*, 286 Ga. App. at 730 (1). Again, we decline to overrule *Whitaker v. Zirkle* and its progeny.

[5] The appellants contend that the subsequent injury exception does not apply in this case because Mr. Gannon was never asymptomatic after the misdiagnosis but rather continued to display hematuria and other symptoms of kidney cancer. As the appellants argue, we have held that, "[i]n order for [the subsequent injury] exception to apply, not only must there be evidence that the plaintiff developed a new injury, but the plaintiff also must remain asymptomatic for a period of time following the misdiagnosis." (Citations and punctuation omitted.) *Amu v. Barnes*, 286 Ga. App. at 729 (1). The question is not whether Mr. Gannon was asymptomatic for the kidney cancer that was present at the time of the misdiagnosis. The subsequent injury exception applies here because, for a period of time following the misdiagnosis, Mr. Gannon was asymptomatic for the *metastatic* cancer that constitutes his injury. If, on the other hand, symptoms attributable to the metastatic cancer had already been present at the time of the negligent misdiagnosis, then the subsequent injury exception would not apply. See *Bousset v. Walker*, 285 Ga. App. 102, 104 (2) (645 SE2d 593) (2007) (where the plaintiff continued to suffer

judgment, the appellants bear the burden of coming forward with evidence establishing their affirmative defense that the Gannons' complaint was untimely under OCGA § 9-3-71 (a). *Ward v. Bergen*, 277 Ga. App. at 260. As a result, they are entitled to summary judgment only if the undisputed evidence shows that Mr. Gannon experienced symptoms of his subsequent injury (that is, cancer that had metastasized and invaded organs or tissues other than his kidney) more than two years before the Gannons filed their malpractice suit on October 29, 2004. Id. The appellants contend the metastasis of Mr. Gannon's kidney cancer became manifest to him when he experienced gross hematuria (visible blood in the urine) and night sweats, which appeared, respectively, in August 2002 and perhaps as early as June 2002. The record contains expert medical testimony, however, that these symptoms were attributable to his (pre-metastasis) kidney cancer or to unrelated medical conditions. Accordingly, the undisputed evidence does not show that Mr. Gannon experienced any symptom of his subsequent injury before he found the lump in his neck on October 31, 2002. Because the Gannons filed their complaint within two years after this symptom attributable to the metastatic cancer first appeared, the trial court correctly ruled that the appellants are not entitled to summary judgment on the basis of the statute of limitation. *Ward v. Bergen*, 277 Ga. App. at 258; *Staples v. Bhatti*, 220 Ga. App. 404, 405-406 (1) (469 SE2d 490) (1996).

2. The appellants contend that, because Ms. Gannon filed her wrongful death claim more than five years after the appellants' alleged misdiagnoses in June and July 2000,[6] the trial court erred in failing to grant their motions for summary judgment based on the statute of repose.[7] The premise that the medical malpractice statute

---

pain from the time the defendant failed to diagnose an infection in a tooth until the time that the infection invaded her sinuses, plaintiff did not as a matter of law sustain a subsequent injury under *Whitaker v. Zirkle*); *Stafford-Fox v. Jenkins*, 282 Ga. App. at 667 (where the plaintiff continued to suffer from the effects of an untreated vitamin B-12 deficiency from the time of the misdiagnosis until the deficiency caused permanent neurological damage, plaintiff did not as a matter of law sustain a subsequent injury under *Whitaker v. Zirkle*); *Burt v. James*, 276 Ga. App. 370 (623 SE2d 223) (2005) (where the plaintiff experienced redness, swelling, and pain at the site of the allegedly negligent back surgery from the time of surgery until he was properly diagnosed and treated, plaintiff did not as a matter of law sustain a subsequent injury under *Whitaker v. Zirkle*); *Harrison v. Daly*, 268 Ga. App. at 280 (where the plaintiff experienced pain, lumps in her breast, and increasing breast size from the time of the defendant's failure to diagnose breast cancer until the time of the correct diagnosis, plaintiff did not as a matter of law sustain a subsequent injury under *Whitaker v. Zirkle*).

[6] We note that because Dr. Goodrich first treated Mr. Gannon in April 2001, Ms. Gannon filed her wrongful death claim within five years after Dr. Goodrich's allegedly negligent act or omission.

[7] The statute of repose, OCGA § 9-3-71 (b), requires the plaintiff to initiate legal proceedings within five years after the act or omission that constitutes medical negligence. The statute of limitation, OCGA § 9-3-71 (a), requires the plaintiff to file each claim arising from the medical

of repose bars a claim for wrongful death in every case where the patient dies more than five years after the medical negligence that allegedly caused the death is defeated by our recent holding in *Wesley Chapel Foot and Ankle Center v. Johnson,* 286 Ga. App. 881 (650 SE2d 387) (2007), cert. denied October 29, 2007. As we explained in that decision, a medical malpractice wrongful death claim is timely under the medical malpractice statute of repose where (1) the plaintiff brings a timely medical malpractice action, that is, within five years after the negligent or wrongful act or omission and within two years after a resulting injury, and (2) the wrongful death claim, if not brought as part of the original action, is properly added to that same pending litigation. Id. at 885. As we noted in *Wesley Chapel Foot and Ankle Center v. Johnson,* this construction is consistent with the stated purposes of the medical malpractice statute of repose, including "preventing stale medical malpractice claims"[8] in recognition of the fact that "time erodes evidence, memories, and the availability of witnesses."[9] Id.

In this case, it is undisputed that the Gannons filed their original complaint within five years after the negligent or wrongful acts and omissions and within two years after the resulting injury[10] and that Ms. Gannon brought her wrongful death claim within two years after Mr. Gannon died, by filing an amendment to that pending action. Thus, Ms. Gannon's wrongful death claim was timely filed both in terms of the statute of repose and the statute of limitation. The trial court correctly denied the appellants' motions for summary judgment on Ms. Gannon's wrongful death claim. *Wesley Chapel Foot and Ankle Center v. Johnson,* 286 Ga. App. at 885.

*Judgment affirmed. Barnes, C. J., Johnson, P. J., Blackburn, P. J., Miller, Adams and Bernes, JJ., concur. Phipps and Mikell, JJ., concur in part and dissent in part. Andrews, P. J., Smith, P. J., and Ruffin, J., dissent.*

PHIPPS, Judge, concurring in part and dissenting in part.

For the reasons given in our dissent in *Wesley Chapel Foot and Ankle v. Johnson,*[11] in my opinion Ms. Gannon's wrongful death claims against Dr. Cleaveland and Dr. Entrekin are barred by the statute of repose in OCGA § 9-3-71 (b).

---

negligence within two years after the resulting injury (in the case of a claim for personal injury) or death (in the case of a claim for wrongful death).

[8] OCGA § 9-3-73 (f).

[9] (Citations omitted.) *Braden v. Bell,* 222 Ga. App. 144, 148 (473 SE2d 523) (1996) (Beasley, C. J., concurring specially).

[10] See Division 1, supra.

[11] 286 Ga. App. 881 (650 SE2d 387) (2007).

Therefore, as to Division 2, I dissent from the affirmance of the trial court's denial of Dr. Cleaveland's motion for summary judgment as to the wrongful death claim in Case No. A07A0837 and from the affirmance of the denial of Dr. Entrekin's motion for summary judgment as to the wrongful death claim in Case No. A07A0838; I concur in the affirmance of the denial of Dr. Goodrich's and therefore Internal Medicine Associates' motion for summary judgment in Case No. A07A0838.

Moreover, I concur in Division 1's judgment of affirmance of the denial of all defendants' motions for summary judgment as to the personal injury and loss of consortium claims brought in the original complaint.

Although the result with respect to the wrongful death claim might not seem logical or fair, it is in my opinion demanded by the language of OCGA §§ 9-3-71 (b) and 9-3-70 and by "case law establish[ing] that actions seeking damages for personal injury and for wrongful death are separate and distinct, even though they arise out of the same event."[12]

I am authorized to state that Judge Mikell joins in this opinion.

ANDREWS, Presiding Judge, dissenting.

I respectfully dissent because I find: (1) that the two-year statute of limitation in OCGA § 9-3-71 (a) bars the medical malpractice action against all the defendants, and (2) that the five-year statute of repose in OCGA § 9-3-71 (b) bars the wrongful death action against Dr. Cleaveland and Dr. Entrekin.

1. On October 29, 2004, William and Jane Gannon filed a medical malpractice action against Mr. Gannon's urologist, Dr. Cleaveland, and against his primary care physicians, Dr. Entrekin and Dr. Goodrich, along with their professional corporation, Internal Medicine Associates of Rockdale, P.C. (IMA) (hereafter collectively referred to as the medical defendants).[13] As shown by the allegations of the complaint and the record, the medical malpractice action was brought on the following basis: Mr. Gannon had kidney cancer when Dr. Cleaveland first treated him in June 2000, when Dr. Entrekin first treated him in July 2000, and when Dr. Goodrich first treated him in April 2001; that despite the fact that Mr. Gannon had a mass

---

[12] *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 867 (2) (463 SE2d 5) (1995) (footnote omitted).

[13] IMA was named as a defendant on the basis that it was liable under the principle of respondeat superior for the alleged malpractice of its employees, Dr. Entrekin and Dr. Goodrich. Ms. Gannon sought recovery against the medical defendants for loss of consortium with her husband, Mr. Gannon. After Mr. Gannon died in July 2005, Ms. Gannon, as the representative of Mr. Gannon's estate, was substituted in his place as plaintiff.

on his kidney and other symptoms of kidney cancer when the medical defendants saw and treated him, they negligently failed to diagnose that he had kidney cancer and negligently failed to provide him with treatment for the cancer; that if the medical defendants had properly diagnosed the kidney cancer and treated it, more likely than not the cancer would have been cured; and because the medical defendants failed to properly diagnose and treat the kidney cancer, the cancer progressed and metastasized over time, spreading throughout Mr. Gannon's body and becoming an incurable and terminal illness.

The medical defendants moved for summary judgment on the basis that the two-year statute of limitation for medical malpractice actions in OCGA § 9-3-71 (a) expired before the complaint was filed in October 2004. Under OCGA § 9-3-71 (a), "an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." This plainly means that the two-year limitation period commenced to run from the occurrence of an injury arising from the alleged malpractice. *Young v. Williams*, 274 Ga. 845, 846-847 (560 SE2d 690) (2002). In most cases where the alleged medical malpractice is misdiagnosis and failure to treat, the injury begins immediately upon the misdiagnosis. *Kaminer v. Canas*, 282 Ga. 830 (653 SE2d 691) (2007). "Thus, in most misdiagnosis cases, the two-year statute of limitations . . . begin[s] to run . . . on the date that the doctor negligently failed to diagnose the condition and, thereby, injured the patient." Id at 832 (1). Moreover, "[b]ecause OCGA § 9-3-71 (a) provides that the period of limitation begins to run at the time of injury, initiating the period of limitation in a medical malpractice action at some other point, such as when the alleged negligence is first discovered[,] would be contrary to the plain language of the statute. *Crowe v. Humana*, 263 Ga. 833, 834 (1) (439 SE2d 654) (1994)." (Punctuation omitted.) Id.

In the present case, the injury beginning immediately upon the first misdiagnosis by each of the medical defendants was that, as a consequence of the misdiagnosis, Mr. Gannon continued to suffer from the undiagnosed and untreated kidney cancer that continued to progress and metastasize over a period of time. *Stafford-Fox v. Jenkins*, 282 Ga. App. 667, 669-670 (639 SE2d 610) (2006); *Kaminer*, 282 Ga. at 833 (1). This conclusion necessarily follows from the malpractice complaint itself, which is based on allegations that the misdiagnosis and failure to treat the existing kidney cancer when it could have been cured was the continuing and proximate cause of the progressive growth and metastasis of the cancer throughout Mr. Gannon's body, for which recovery is sought. On these allegations, logic dictates that the medical malpractice action relies on the claim that an injury arose from the initial misdiagnosis by each medical

defendant — an injury which began immediately upon each misdiagnosis and continued as the untreated cancer progressed. The allegations of the complaint were supported by medical evidence in the record, including evidence that, at the time of the alleged misdiagnoses, a cancerous mass existed on Mr. Gannon's kidney, which the medical defendants failed to recognize as cancer. Accordingly, Mr. Gannon was injured when Dr. Cleaveland, Dr. Entrekin, and Dr. Goodrich allegedly failed to diagnose and treat the existing kidney cancer in 2000 and 2001. Because the medical malpractice action was filed in October 2004, more than two years after an injury arising from misdiagnosis by the medical defendants, the action was barred by the two-year statute of limitation in OCGA § 9-3-71 (a).

This result cannot be avoided by concluding, as the majority does, that the two-year statute of limitation in OCGA § 9-3-71 (a) did not commence to run until Mr. Gannon suffered a new or different injury which arose from the misdiagnosis, but which occurred some period of time subsequent to the misdiagnosis. The majority concludes that, when the untreated kidney cancer progressed and metastasized into a terminal cancer condition some period of time subsequent to the misdiagnosis, this was a subsequent injury from which the statute of limitation commenced to run on October 31, 2002, when Mr. Gannon experienced a symptom of the metastasized cancer by feeling a lump in his neck. A similar new or subsequent injury theory was rejected in *Kaminer*, when the Supreme Court addressed an attempt to revive the previously rejected "continuing treatment doctrine." *Kaminer*, 282 Ga. at 832 (1). As the Supreme Court explained in *Kaminer*, when a progressive disease is misdiagnosed and left untreated, the injury which begins immediately upon the misdiagnosis does not become a "new injury" for purposes of the statute of limitation when the untreated disease eventually worsens as "the direct proximate continuing result of the original misdiagnoses." Id. at 834 (1). Instead, "[w]here, as here, the patient's symptoms of his untreated condition worsen over time, for statute of limitations purposes, the 'injury' occurred at the time of the alleged misdiagnosis." (Citations and punctuation omitted.) Id. The continuing omission on the part of the medical defendants to properly diagnose and treat Mr. Gannon as his untreated kidney cancer progressed, metastasized, and became a terminal condition, "was a failure to avoid the ultimate effect of their earlier breaches and a failure to mitigate their own damages, [but] [i]t was not an act inflicting new harm." (Citation and punctuation omitted.) Id. at 835 (1); *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 807 (273 SE2d 16) (1980). It follows that there was no different or additional cause of action for a new or subsequent injury from which to run the statute of limitation at a later date.

This conclusion is required by the legislature's decision to commence the running of the two-year statute of limitation in OCGA § 9-3-71 (a) from the date that the patient first incurs an injury arising from the alleged malpractice. Because a patient's cause of action for malpractice can accrue no sooner than the date the patient first incurs an injury arising from the alleged malpractice, the date chosen by the legislature to commence the statute of limitation is the earliest possible date from which the limitation period can run. *Shessel v. Stroup*, 253 Ga. 56, 57-58 (316 SE2d 155) (1984); *Jankowski*, 246 Ga. at 805-806; OCGA § 51-1-8. Accordingly, when Mr. Gannon incurred an injury arising from and beginning immediately upon the first misdiagnosis by each medical defendant, his cause of action against each defendant for any injury arising from the misdiagnosis accrued on those dates, and the two-year statute of limitation in OCGA § 9-3-71 (a) commenced to run from those dates. This is true even though Mr. Gannon's kidney cancer had not yet progressed to the terminal condition for which he later sued to recover, and therefore he had not yet incurred all or even the greater part of the injury which ultimately arose from the misdiagnosis. *Jankowski*, 246 Ga. at 806-807; *Kaminer*, 282 Ga. at 834-835 (1). Once the cause of action accrued for injury arising from and occurring immediately upon the initial misdiagnosis of the kidney cancer, this was a complete cause of action, which triggered the running of the statute of limitation on the claim that the subsequent growth and metastasis of the cancer arose from the same misdiagnosis. *Jankowski*, 246 Ga. at 806-807; *Kaminer*, 282 Ga. at 834-835 (1). Moreover, under OCGA § 9-3-71 (a) the statute of limitation commenced to run from the date of the first injury arising from the initial misdiagnosis of the kidney cancer even if Mr. Gannon had no knowledge at the time that he had kidney cancer. *Kaminer*, 282 Ga. at 834 (1). Although commencing the two-year limitation period in OCGA § 9-3-71 (a) from the date of injury without any requirement that the patient knew or should have known about the injury can cut off rights in some cases before there is any knowledge of injury, prescribing periods of limitation is a legislative, not a judicial function, and, as the Supreme Court has observed, "the legislature has the power, within constitutional limitations, to make such provisions." (Citation and punctuation omitted.) *Kaminer*, 282 Ga. at 838 (4); *Young*, 274 Ga. at 847.[14]

---

[14] With respect to the medical malpractice statute of limitation, the Supreme Court held that a prior version of OCGA § 9-3-71, which commenced the limitation period from the date of the alleged negligent act, was unconstitutional only to the extent that the limitation period could expire and cut off a cause of action before an injury occurred and the cause of action accrued. *Shessel*, 253 Ga. at 56; *Clark v. Singer*, 250 Ga. 470 (298 SE2d 484) (1983).

The majority relies in part on *Walker v. Melton*, 227 Ga. App. 149 (489 SE2d 63) (1997), as support for its contention that the statute of limitation does not run from the date of the initial misdiagnosis because this case falls within a "subsequent injury" exception. But the "subsequent injury" exception recognized in *Walker* does not apply in this case. In *Walker*, we concluded that, because "the injuries sued for arose after the date of the misdiagnosis that caused them," the statute of limitation did not commence to run until the date of those subsequent injuries. Id. at 150. The facts in *Walker* were unique. An x-ray of Walker's spine after he was injured in an automobile accident showed that he sustained a "35 percent compression fracture of a vertebra" in the accident. Dr. Melton, the radiologist who read the x-ray in May 1992, failed to recognize any fracture, so Walker received no treatment for the fracture. In January 1994, after experiencing an episode of back pain, Walker was treated by another physician, who took an x-ray of his spine which showed that he had a 66 percent compression fracture of the same vertebra. In May 1995, Walker sued Dr. Melton claiming he misdiagnosed the initial x-ray in May 1992. Because the suit was filed more than two years after the May 1992 misdiagnosis, Dr. Melton asserted that the two-year statute of limitation in OCGA § 9-3-71 (a) barred the suit. The medical evidence showed that Walker's vertebra fracture progressively worsened from a 35 percent fracture at the time of the misdiagnosed x-ray in May 1992, to a 66 percent fracture when Walker was properly diagnosed and treated in January 1994. But the medical evidence also showed that Dr. Melton's misdiagnosis did not cause the initial worsening from 35 percent to 50 percent because the fracture would have worsened to that degree even with proper diagnosis and treatment. Thus, Walker's suit alleged that the misdiagnosis only caused the subsequent worsening from 50 percent to 66 percent. Since the worsening from 50 percent to 66 percent did not occur at the time of the May 1992 misdiagnosis, but at some point in time subsequent to the May 1992 misdiagnosis, we found that Walker sued only for an injury which occurred subsequent to the misdiagnosis, and that the statute of limitation commenced to run from the subsequent injury. Id. at 149-150.

*Walker* shows that the statute of limitation in OCGA § 9-3-71 (a) commences to run from an injury which occurred some period of time subsequent to the alleged misdiagnosis where the "subsequent injury" is the first injury arising from the misdiagnosis. If an injury arising from the misdiagnosis occurs immediately upon the misdiagnosis (as in most cases, including the present case), the limitation period in OCGA § 9-3-71 (a) commences to run from the first injury, despite the fact that the misdiagnosed condition progressively worsens and the patient incurs additional and subsequent injury also

arising from the same misdiagnosis. *Jankowski,* 246 Ga. at 806-807; *Kaminer,* 282 Ga. at 834 (1).

The majority also relies on *Whitaker v. Zirkle,* 188 Ga. App. 706 (374 SE2d 106) (1988), for its conclusion that the injury for which Mr. Gannon sought recovery was the metastasis of the kidney cancer; that this injury occurred at some point subsequent to the misdiagnosis, and that, because the jury could find that Mr. Gannon experienced no symptoms of the metastasized cancer until he felt the lump in his neck on October 31, 2002, that was the date on which the two-year statute of limitation commenced to run. *Whitaker* cannot be squared with the plain application of the statute of limitation in OCGA § 9-3-71 (a) and should be overruled to the extent it is inconsistent with the statute.

In *Whitaker,* the patient, Zirkle, had a suspicious mole and surrounding tissue removed from her back in May 1978 and examined at that time by a pathologist, Dr. Whitaker. Because Dr. Whitaker diagnosed the removed tissue as containing no cancer, Zirkle received no further treatment. Zirkle did not experience any symptoms of cancer until May 1985, when she noticed nodules on her body, which were diagnosed as containing metastasized cancer. A reexamination of the tissue sample initially examined by Dr. Whitaker revealed that it contained malignant melanoma cancer cells, which Dr. Whitaker failed to detect in 1978. Zirkle's treating physician diagnosed her in 1985 as suffering from melanoma cancer which had metastasized to other parts of her body from the site of the mole removed in 1978. Id. at 706. In May 1986, Zirkle and her husband sued Dr. Whitaker for medical malpractice claiming that the metastasized cancer she discovered in 1985 was an injury arising from Dr. Whitaker's 1978 misdiagnosis. As *Whitaker* made clear:

> Plaintiffs do not allege the misdiagnosis caused Mrs. Zirkle to have cancer; the basis of plaintiffs' claims is that she had cancer all along. The injury complained of is the subsequent metastasis of cancerous cells which remained at the site where the mole was removed. The subsequent metastasis allegedly would not have occurred if the cancer had been properly diagnosed and treated at the time of the original biopsy.

Id. at 708. Dr. Whitaker asserted that the two-year statute of limitation in OCGA § 9-3-71 (a) barred the malpractice suit. Id. at 706-707. *Whitaker* identified the relevant issue as the date Zirkle's injury occurred; recognized that in most misdiagnosis cases the injury begins immediately upon the misdiagnosis, but then observed that Zirkle "suffered no further symptoms of cancer until shortly

before cancer was properly diagnosed in 1985, some seven years after the initial misdiagnosis." Id. at 707-708. Based on this record, *Whitaker* found that, if the cancer Zirkle had in 1978 at the time of the misdiagnosis was localized near the site of the mole and had not yet metastasized, then the injury for which she sued — the subsequent metastasized cancer — occurred at some later date. Id. at 708. Thus, *Whitaker* held that, "[w]hen an injury occurs subsequent to the date of medical treatment, the statute of limitation commences from the date the injury is discovered." Id. Because Zirkle did not discover she had cancer until it was properly diagnosed in 1985, *Whitaker* held that the two-year limitation period in OCGA § 9-3-71 (a) commenced to run from the date Zirkle discovered the cancer in 1985, and that the suit was timely filed in 1986.

*Whitaker* erred by focusing on the fact that Zirkle's suit alleged that the subsequent metastasis of her untreated cancer arose from the 1978 misdiagnosis, while ignoring the fact that, as an immediate consequence of the 1978 misdiagnosis, Zirkle continued to suffer from the untreated cancer that progressively spread and metastasized over a period of time. Because Zirkle suffered an injury which arose from and occurred immediately upon the 1978 misdiagnosis, this triggered the running of the statute of limitation from that date, even if Zirkle had not yet incurred the subsequent metastasis. *Kaminer*, 282 Ga. at 834 (1); *Jankowski*, 246 Ga. at 807.

*Whitaker* also erred by appending a discovery rule to OCGA § 9-3-71 (a) to toll the commencement of the statute of limitation until the date Zirkle discovered the cancer. As stated above, the plain language of OCGA § 9-3-71 (a) precludes use of a discovery rule to toll or delay commencement of the two-year limitation period until the patient discovers the injury. *Kaminer*, 282 Ga. at 834 (1). In the present case, the majority concludes that a jury could find that Mr. Gannon did not discover he had metastatic cancer until he found a lump in his neck on October 31, 2002, and that the malpractice action was timely filed less than two years later on October 29, 2004. Yet the entire basis for the medical malpractice claim is that Mr. Gannon had kidney cancer when the medical defendants misdiagnosed his condition in 2000 and 2001, and that, as a result of the misdiagnosis, he continuously suffered from untreated cancer which progressed until it metastasized and became a terminal condition. Moreover, the medical evidence in the record, including evidence that a cancerous mass was in Mr. Gannon's kidney at the time of the misdiagnosis, shows that Mr. Gannon suffered an injury arising from and occurring immediately upon each initial misdiagnosis. An injury arose because, at the time of each misdiagnosis, he had untreated kidney cancer which continued to grow and metastasize as a result of each misdiagnosis and failure to treat. On this record, the two-year limitation

period in OCGA § 9-3-71 (a) commenced to run when Mr. Gannon suffered immediate and continuous injury at the time of the alleged misdiagnosis in 2000 and 2001. Nevertheless, the majority tolls the commencement of the limitation period until the point that Mr. Gannon discovered he had metastasized cancer. This Court again refuses to disavow use of a discovery rule despite the clear directive of the legislature in OCGA § 9-3-71 (a) and numerous pronouncements by the Supreme Court that a discovery rule is contrary to the plain language of the statute. See *Stafford-Fox*, 282 Ga. App. at 673-680 (Andrews, P. J., concurring specially).

The majority notes that the Supreme Court's decision in *Kaminer* acknowledged a line of cases decided by this Court originating in and represented by *Whitaker*. *Kaminer* expressly declined to address the continuing viability of *Whitaker* and similar cases decided by this Court, which purport to involve "the most extreme circumstances in which the plaintiff remains asymptomatic for a period of time following the misdiagnosis." (Citation and punctuation omitted.) *Kaminer*, 282 Ga. at 837 (2). *Kaminer* also reiterated that a rule which tolls the limitation period until a patient discovers the injury is contrary to the plain meaning of OCGA § 9-3-71 (a). *Kaminer*, 282 Ga. at 832 (1). Perhaps a jury could find that, for a period following the misdiagnosis, Mr. Gannon was "asymptomatic" because he did not experience pain, suffering or other symptoms of the cancer left in his body as a result of the misdiagnosis. But that is not the issue in this case. The issue is what the record shows with respect to an injury arising from the misdiagnosis and when that injury first occurred. The medical malpractice claim and the undisputed medical evidence supporting the claim shows that a cancerous mass was found in Mr. Gannon's kidney at the time of the misdiagnosis; that it was not recognized as cancer, and that it was left in his kidney untreated where it grew and metastasized. Whether or not Mr. Gannon knew about it, the untreated cancerous mass itself was evidence of an injury immediately arising from the misdiagnosis. The mass on his kidney was also a medical symptom of the cancer, so in that sense Mr. Gannon was not "asymptomatic" for any period following the misdiagnosis. Put simply, how can a doctor misdiagnose an "asymptomatic" condition? Without any symptom — known to the patient or not — there is no way to claim that a doctor should have diagnosed the condition. The limitation period in OCGA § 9-3-71 (a) commenced to run on the misdiagnosis claim when Mr. Gannon incurred an injury immediately arising from the alleged failure to diagnose and treat the cancerous mass on his kidney.

2. I conclude that the five-year statute of repose in OCGA § 9-3-71 (b) bars the wrongful death cause of action against Dr. Cleaveland and Dr. Entrekin. That cause of action was based on allegations that

medical malpractice by Dr. Cleaveland and Dr. Entrekin in June and July 2000 caused Mr. Gannon's death. Because the alleged malpractice by Dr. Cleaveland and Dr. Entrekin occurred more than five years before the wrongful death action was asserted in September 2005, the five-year statute of repose in OCGA § 9-3-71 (b) barred the action against these defendants.[15] *Braden v. Bell*, 222 Ga. App. 144 (473 SE2d 523) (1996).

Based on *Wesley Chapel Foot and Ankle Center v. Johnson*, 286 Ga. App. 881 (650 SE2d 387) (2007), the majority concludes that the wrongful death action was timely brought after the expiration of the statute of repose because it was added by amendment to a medical malpractice action timely filed within the applicable statute of limitation. Although I find for the above-stated reasons that the statute of limitation expired before the malpractice action was filed, the majority holds to the contrary. Accordingly, for the reasons stated in my dissent in *Wesley Chapel*, I reiterate my belief that *Wesley Chapel* was wrongly decided and should be overruled. I also write to add that, because I would find that the statute of limitation expired before the malpractice action was filed, there would be no timely filed malpractice action to amend, and therefore the exception to the statute of repose in *Wesley Chapel* would not apply.

I am authorized to state that Judge Ruffin joins in this dissent, and that Presiding Judge Smith joins in this dissent as to Division 1 only.

SMITH, Presiding Judge, dissenting.

I join fully in Division 1 of Presiding Judge Andrews's dissent, but I cannot join that portion of Division 2 which addresses the merits of the statute of repose. That issue is mooted by Division 1 of the dissent. In other words, if Division 1 of the dissent were this court's majority opinion, the statute of repose issue should not be reached at all. Therefore, I join Division 2 of Judge Andrews's dissent only to the extent that it finds the statute of repose issue moot.

DECIDED NOVEMBER 30, 2007 —
RECONSIDERATIONS DENIED DECEMBER 14, 2007 —

*Owen, Gleaton, Egan, Jones & Sweeney, Rolfe M. Martin*, for appellant (case no. A07A0837).

---

[15] The record shows that Dr. Goodrich first treated Mr. Gannon in April 2001, less than five years before the wrongful death action was asserted in September 2005. Accordingly, the statute of repose does not bar this action against Dr. Goodrich, nor does it bar this action against IMA to the extent that the claim against IMA is based on alleged malpractice by Dr. Goodrich.

Martin Snow, Robert R. Gunn II, Richard A. Epps, Jr., for appellants (case no. A07A0838).
Maniklal & Dennis, Preyesh K. Maniklal, Charles M. Cork III, for appellees.