S07G0489. KAMINER v. CANAS et al.
S07G0566. BOARD OF REGENTS OF THE UNIVERSITY
SYSTEM OF GEORGIA v. CANAS et al.
S07G0578. MCG HEALTH, INC. v. CANAS et al.
S07G0587. AL-JABI v. CANAS et al.

(653 SE2d 691)

CARLEY, Justice.

In 1984, Derek Canas was born with a rare heart defect. At the age of two months, he underwent surgery at the Medical College of Georgia Hospital (Hospital). During and after the procedure, he received transfusions of whole blood and blood products. In May of 1991, Dr. Sharon Kaminer, who was an employee of the Hospital, became Canas' pediatric cardiologist. In May of 1993, Dr. Ayman Al-Jabi became his general pediatric medical care provider. Although the child displayed signs of pediatric AIDS, neither Dr. Kaminer nor Dr. Al-Jabi ever arrived at that diagnosis. They both attributed his symptoms to his heart condition. In April of 2001, Canas was finally tested for HIV and diagnosed with AIDS. He began to receive treatment, to which he has responded favorably. His condition is the result of the blood transfusions he received at the Hospital.

On December 28, 2001, Canas brought suit against Dr. Kaminer and Dr. Al-Jabi. On February 7, 2003, he filed an amended complaint which added the Board of Regents of the University System of Georgia (Board) and MCG Health, Inc. (MCGHI) as defendants and which alleged that, in their capacities as operators of the Hospital, they were vicariously liable for Dr. Kaminer's alleged malpractice. All four defendants moved for summary judgment. The trial court granted summary judgment "on all claims for medical malpractice where the alleged negligent or wrongful act or omission occurred more than 5 years before the date on which the action was brought." However, summary judgment was denied "on all medical malpractice claims where the injury occurred within 2 years of the date this action was filed and the negligent or wrongful act or omission that caused the injury occurred within 5 years of the date this action was filed."

On appeal, the Court of Appeals affirmed, even though Dr. Kaminer and Dr. Al-Jabi initially misdiagnosed Canas' condition more than five years before his suit was filed. Within two years of the

commencement of the action, the two physicians had seen Canas and persisted in their failure to diagnose his worsening AIDS condition, and the Court of Appeals concluded that

> where a patient continues to be treated by the doctor and presents the doctor with a significant change in manifestations of his condition — additional symptoms or significantly increased symptoms — such that the standard of care would require the doctor to reevaluate the first diagnosis, it can be a new negligent act or omission to fail to reconsider the original diagnosis and take appropriate action. . . . There is evidence . . . that after the initial misdiagnoses[,] Canas presented [Dr.] Al-Jabi and [Dr.] Kaminer with significant changes in the manifestations of his condition.

*Canas v. Al-Jabi*, 282 Ga. App. 764, 777 (1) (a) (639 SE2d 494) (2006). The four defendants applied for certiorari, and we granted their petitions to determine whether the Court of Appeals erred in holding that, if a plaintiff in a misdiagnosis case presents with additional or significantly increased symptoms of the same misdiagnosed disease, the medical malpractice statute of limitations and statute of repose do not bar the plaintiff's claims.

1. With regard to the statute of limitations, "[u]nder the 1976 medical malpractice statute the time period [began] to run on the date the negligence occur[red]." *Shessel v. Stroup*, 253 Ga. 56, 57 (316 SE2d 155) (1984). However, that is no longer the law. After that statute was found to be unconstitutional in *Shessel*, the General Assembly replaced it with current OCGA § 9-3-71 (a). See *Young v. Williams*, 274 Ga. 845, 846 (560 SE2d 690) (2002). OCGA § 9-3-71 (a) provides, in relevant part, that "an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." At the same time that the General Assembly changed the date for commencement of the two-year statute of limitations to the occurrence of "an injury or death," it enacted a new five-year statute of repose which, like the former statute of limitations, runs from "the date on which the negligent or wrongful act or omission occurred." OCGA § 9-3-71 (b).

> This is a case of misdiagnosis. "In most such cases, the injury begins immediately upon the misdiagnosis due to pain, suffering, or economic loss sustained by the patient from the

time of the misdiagnosis until the medical problem is properly diagnosed and treated. The misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis." [Cit.]

*Frankel v. Clark*, 213 Ga. App. 222, 223 (444 SE2d 147) (1994). Thus, in most misdiagnosis cases, the two-year statute of limitations and the five-year statute of repose begin to run simultaneously on the date that the doctor negligently failed to diagnose the condition and, thereby, injured the patient.

"[P]rescribing periods of limitation is a legislative, not a judicial, function . . . ." *Hunter, Maclean, Exley & Dunn v. Frame*, 269 Ga. 844, 846 (1) (507 SE2d 411) (1998). Because OCGA § 9-3-71 (a) provides that the period of limitation begins to run at the time of injury, "initiating the period of limitation in a medical malpractice action [at some other point, such as] when the alleged negligence is first discovered would be contrary to the plain language of" the statute. *Crowe v. Humana*, 263 Ga. 833, 834 (1) (439 SE2d 654) (1994). That is why the continuing treatment doctrine cannot apply in Georgia. It is inconsistent with OCGA § 9-3-71 (a), since its focus is not on the date that the patient was injured by the allegedly negligent misdiagnosis. Instead, the continuing treatment doctrine provides that,

"[i]f the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuous treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has terminated — unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive. [Cit.]"

*Williams v. Young*, 247 Ga. App. 337, 340 (543 SE2d 737) (2000), rev'd, *Young v. Williams*, supra.

[T]he continuous treatment doctrine, which "deems that the *negligent act* . . . continues as long as the patient remains under the physician's care" ([cit.]), is more appropriately incorporated into a statute of limitation that commences upon the occurrence of the negligent act. [Cits.] (Emphasis in original.)

*Young v. Williams*, supra at 846.

" '(T)he true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result.' [Cits.]" *Allrid v. Emory Univ.*, 249 Ga. 35, 36 (1) (a) (285 SE2d 521) (1982). With regard to Canas' claim for the misdiagnosis of his AIDS condition, he was injured and, consequently, the statute of limitations began to run, on the date that Dr. Kaminer and Dr. Al-Jabi first failed to diagnose it. *Ford v. Dove*, 218 Ga. App. 828, 830 (3) (463 SE2d 351) (1995), overruled on other grounds, *Ezor v. Thompson*, 241 Ga. App. 275, 279 (1) (526 SE2d 609) (1999).

> The injury at the time of the misdiagnosis was that [Canas] continued to suffer from an undiagnosed and untreated [AIDS condition] that continued to slowly progress and worsen. Clearly, [Canas'] injury had occurred, and [his] cause of action had accrued, [as of the initial misdiagnoses]. The fact that [he] did not know the medical cause of these symptoms does not affect the applicability of OCGA § 9-3-71 (a). In addition, the fact that these symptoms worsened . . . does not lead to a different result, as the subsequent [worsened condition] was directly related to the initial symptoms and misdiagnosis. [Cit.] The two-year statute of limitation[s] in OCGA § 9-3-71 (a) commenced to run on [Canas'] medical malpractice action alleging misdiagnosis of [his AIDS condition] from the date of [his] injury in [1991, in the case of Dr. Kaminer, and 1993, in the case of Dr. Al-Jabi] and expired prior to the date [he] filed [his complaint against them] on [December 28, 2001].

*Stafford-Fox v. Jenkins*, 282 Ga. App. 667, 669-670 (1) (639 SE2d 610) (2006). " 'A subjective belief that symptoms were due to some other cause unrelated to the alleged negligence does not change the point at which the injury occurred.' [Cit.]" *Ford v. Dove*, supra at 831 (3).

Nevertheless, Canas contends that, when he developed the additional or significantly increased symptoms of his misdiagnosed condition and still was not treated for AIDS, he was, in effect, reinjured and the statute of limitations recommenced. However, any subsequent failure on the part of Dr. Kaminer or Dr. Al-Jabi to diagnose and treat Canas for AIDS despite the change in his condition did not inflict any new injury on him. Instead, the result of that failure was that his original injury, having now presumably worsened as the consequence of the lack of treatment stemming from the initial misdiagnoses, remained untreated and was, therefore, allowed to continue unabated. His preexisting injury was not transformed into a new injury simply because his underlying AIDS condition remained

untreated notwithstanding the increase in his symptoms. Instead, the new injury that he contends he suffered was the direct proximate continuing result of the original misdiagnoses. "With proper diagnosis and treatment, the resultant problems would not have occurred; here, the misdiagnosis and mistreatment *were* the cause of the 'injury' for which [Canas] sought recovery." (Emphasis in original.) *Burt v. James*, 276 Ga. App. 370, 373 (623 SE2d 223) (2005). Where, as here, the patient's symptoms of his untreated condition worsen over time, "for statute of limitation[s] purposes, the 'injury' occurred at the time of the alleged misdiagnosis. [Cits.]" *Harrison v. Daly*, 268 Ga. App. 280, 284 (601 SE2d 771) (2004). Canas' "evidence demonstrates only that [his] existing condition was misdiagnosed and mistreated, and that condition was the same one that existed at the time [he] first sought treatment from Dr. [Kaminer and Dr. Al-Jabi]." *Kane v. Shoup*, 260 Ga. App. 723, 725 (1) (580 SE2d 555) (2003). "If [his subsequent] symptoms were symptoms of the same injury that existed at the time of the alleged misdiagnosis, then the claim is barred by the two-year limitation[s] period." *Kitchens v. Brusman*, 280 Ga. App. 163, 165 (2) (633 SE2d 585) (2006).

Subsequent failures on the part of Dr. Kaminer and Dr. Al-Jabi to recognize that Canas' additional or increased symptoms were indicative of AIDS may well constitute new and separate instances of professional negligence. After *Shessel* and under OCGA § 9-3-71 (a), however, the statute of limitations on a medical malpractice claim no longer commences upon the occurrence of a negligent act or omission on the part of the physician. *Young v. Williams*, supra. It begins on the date of the patient's injury. Even assuming that, following the initial misdiagnoses, Dr. Kaminer and Dr. Al-Jabi were serially negligent in failing to diagnose Canas properly, he has no viable claim for their breach of the applicable standard of medical care unless he suffered an injury as the result.

> In order for a tort action to lie, there must be an injury to the plaintiff, i.e., some initiating event which is the result of the defendant's negligence and brings that wrongful conduct to light. " 'Proof of negligence in the air, so to speak, will not do.' [Cit.]" [Cit.]

*Cotton States Mut. Ins. Co. v. Crosby*, 244 Ga. 456, 457 (1) (260 SE2d 860) (1979). Canas

> had a cause of action against [Dr. Kaminer and Dr. Al-Jabi] on the day the original [misdiagnoses were made]. This was a complete cause of action. For a period of time, [the physicians] had an opportunity to [rediagnose his condition] and

thereby lessen the extent of the claim which [he] could have made against [them]. This omission on the part of [Dr. Kaminer and Dr. Al-Jabi] was a failure to avoid the ultimate effect of the[ir] earlier breach[es] and a failure to mitigate their own damages. It was not an act inflicting new harm.

*Janowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 807 (2) (273 SE2d 16) (1980).

As the Court of Appeals noted, it "would be absurd" to hold "as a matter of law [that] a doctor can only misdiagnose a patient once, regardless of the length of the treatment or the course of the patient's illness." *Canas v. Al-Jabi*, supra at 777 (1) (a). However, the patient's injury, and not the physician's negligence, is the determinative factor for statute of limitations purposes. A holding that the requirement of OCGA § 9-3-71 (a) can be satisfied whenever the doctor persists in a negligent misdiagnosis of the same medical condition would represent an adoption by the judiciary of the continuing treatment doctrine that was rejected by the General Assembly. So long as the patient maintains a professional relationship with the same physician who initially misdiagnosed an underlying condition that thereafter worsens significantly, the statute of limitations will not commence until the error in the original diagnosis is discovered.

The General Assembly has determined that medical malpractice actions must be filed within two years of the occurrence of injury or death arising from a negligent or wrongful act or omission. [Cit.] The legislatively-prescribed statute of limitation[s] does not provide for the commencement of the period of limitation [at any other point], and the judicial branch is not empowered to engraft such a provision on to what the legislature has enacted.

*Young v. Williams*, supra at 847-848.

In addition to reviving the rejected continuing treatment doctrine, the holding of the Court of Appeals in this case introduces an element of unpredictability into the determination of the date that the statute of limitations commences to run on a misdiagnosis claim. A jury issue will arise in every case in which more than two years may have elapsed since the original misdiagnosis, and there are conflicting expert opinions as to whether, within two years of filing suit, the patient's worsening symptoms were of such magnitude as to compel a rediagnosis of his condition. Thus, the viability of a statute of limitations defense in a misdiagnosis case would almost never be capable of determination as a matter of law before a trial on the merits.

Instead of unpredictability, "[i]t is desirable to have stability and certainty in the law. . . . [Cits.]" *Dowis v. Mud Slingers*, 279 Ga. 808, 811 (621 SE2d 413) (2005). Stability and certainty are not advanced by holding that it is possible for the statute of limitations to recommence whenever, over the course of continuing treatment, the physician negligently fails to recognize that the cause of the patient's worsening condition is different from that which was originally diagnosed. In the context of a misdiagnosis case, the plaintiff's "injury" as used in OCGA § 9-3-71 (a) has long been confined to the original negligent diagnosis. *Stafford-Fox v. Jenkins*, supra; *Kitchens v. Brusman*, supra; *Burt v. James*, supra; *Harrison v. Daly*, supra; *Kane v. Shoup*, supra; *Ford v. Dove*, supra. See also *Young v. Williams*, supra at 846 (citing *Ford v. Dove* as authority for expressly rejecting the continuous treatment rule in medical malpractice cases); *Hunter, Maclean, Exley & Dunn v. Frame*, supra at 849 (1), n. 18 (citing *Ford v. Dove* as authority for expressly rejecting the continuing representation rule for legal malpractice). The General Assembly has neither indicated its disapproval of that interpretation of the statute as too restrictive nor expanded it to include instances of serial misdiagnoses by the allegedly negligent doctor.

> "(E)ven those who regard 'stare decisis' with something less than enthusiasm recognize that the principle has even greater weight where the precedent relates to interpretation of a statute." [Cit.] A reinterpretation of a statute after the General Assembly's implicit acceptance of the original interpretation would constitute a judicial usurpation of the legislative function.

*Abernathy v. City of Albany*, 269 Ga. 88, 90 (495 SE2d 13) (1998). See also *Hart v. Owens-Illinois*, 250 Ga. 397, 400 (297 SE2d 462) (1982).

As authority for its holding, the Court of Appeals cited *Oliver v. Sutton*, 246 Ga. App. 436 (540 SE2d 645) (2000). *Canas v. Al-Jabi*, supra at 785 (1) (b). However, that case is distinguishable, as it did not involve a series of failures to diagnose the same underlying medical condition. Instead, the physician in *Oliver* committed a subsequent act of malpractice when he eventually discovered his original diagnosis was wrong and failed to communicate the proper diagnosis to the patient. "Although determining the correct diagnosis after allegedly misdiagnosing the problem is certainly not negligence, failing to communicate the proper diagnosis can be." *Oliver v. Sutton*, supra at 438. There is no dispute that Dr. Kaminer and Dr. Al-Jabi never diagnosed Canas' AIDS condition. Thus, we do not have to decide whether, by failing to inform him that they had discovered that he had AIDS, they thereby committed a subsequent negligent act which

is subject to a separate limitation period. Instead, the determinative factor here is that, after the initial misdiagnoses, Canas did not suffer any new injury during the ensuing course of continuing treatment provided by the two physicians. *Young v. Williams*, supra. By holding that the statute of limitations on Canas' claim began to run at any time other than the date of the original misdiagnoses, the Court of Appeals erroneously adopted a variant of the previously rejected continuing treatment doctrine and also erroneously failed to give effect to the long-standing interpretation given to the term "injury" as it appears in OCGA § 9-3-71 (a).

2. There is a line of Court of Appeals cases in which the patient was held to have suffered a new injury subsequent to the initial diagnosis. See *Walker v. Melton*, 227 Ga. App. 149, 150 (489 SE2d 63) (1997); *Zechmann v. Thigpen*, 210 Ga. App. 726, 728-729 (3) (437 SE2d 475) (1993); *Whitaker v. Zirkle*, 188 Ga. App. 706, 707 (1) (374 SE2d 106) (1988). Canas urges that the denial of Dr. Kaminer's and Dr. Al-Jabi's motions for partial summary judgment should be affirmed under the authority of those decisions. However, those cases involve only "the most extreme circumstances . . . 'in which the plaintiff remains asymptomatic for a period of time following the misdiagnosis.' [Cit.]" *Burt v. James*, supra at 374. As the Court of Appeals noted, that line of cases is not applicable here because Canas' claim

> is premised on these alleged facts: he had AIDS at the beginning of his treatment with [Dr.] Al-Jabi and [Dr.] Kaminer; he had a medical history indicating the possibility of HIV infection; and he had symptoms of AIDS such that [Dr.] Al-Jabi and [Dr.] Kaminer should have recognized a need for further investigation. Canas did not have a more benign precursor condition; nor did he have an asymptomatic period. Instead, his untreated AIDS continuously caused his growth to be stunted, his immune system to be compromised, and his life expectancy to be diminished. Therefore, the limited "new injury" exception does not apply in this case. [Cit.]

*Canas v. Al-Jabi*, supra at 785 (1) (b). Since the limited "new injury" line of decisions cited by Canas in support of his position "are not in any way implicated in this case under the particular fact situation presented[,] . . . this case does not present [this] Court with an appropriate vehicle to address" the continuing viability of those opinions. *Stafford-Fox v. Jenkins*, supra at 670 (1).

3. The Court of Appeals did correctly hold that the statute of repose began to run on the dates that Dr. Kaminer and Dr. Al-Jabi

committed their allegedly negligent acts or omissions, and that the commencement of that five-year period of limitation was not tolled until such time as they ceased to occupy the status of treating physicians. *Canas v. Al-Jabi,* supra at 776-778 (1) (a). However, the applicable dates are the same as those on which the statute of limitations started to run in 1991 and 1993, respectively, when the misdiagnoses were initially reached. Thus, the statute of repose, as well as the statute of limitations, has run on Canas' claim for the negligent failure to diagnose his AIDS condition.

> 4. [W]e find [OCGA § 9-3-71 (a)] to be an extremely harsh limitation in application because it has the effect, in many cases, [certainly including this one,] of cutting off rights before there is any knowledge of injury. Nonetheless, the legislature has the power, within constitutional limitations, to make such provisions.

*Allrid v. Emory Univ.,* supra at 37 (1) (a). Accordingly, based upon the applicability of OCGA § 9-3-71 (a) to the undisputed facts of this case, we are compelled to reverse the judgment of the Court of Appeals.

*Judgment reversed. All the Justices concur, except Sears, C. J., Hunstein, P. J., and Thompson, J., who dissent.*

HUNSTEIN, Presiding Justice, dissenting.

Because I believe that the decision below both conforms to existing precedent and avoids the concededly harsh result reached by the majority, I hereby respectfully dissent.

I agree with the majority that the two-year statute of limitations applicable to those claims by Canas regarding the initial misdiagnoses by Drs. Kaminer and Al-Jabi began to run as of the date these alleged misdiagnoses were rendered. See *Stafford-Fox v. Jenkins,* 282 Ga. App. 667, 669 (639 SE2d 610) (2006) (for statute of limitation purposes, injury in misdiagnosis case occurs at time of misdiagnosis). However, I do not agree with the majority's holding that, as a matter of law, there can be only a single, indivisible injury flowing from serial misdiagnoses of the same condition.

As the majority notes, "[s]ubsequent failures on the part of Dr. Kaminer and Dr. Al-Jabi to recognize that Canas' additional or increased symptoms were indicative of AIDS may well constitute new and separate instances of professional negligence." Maj. Op., p. 834. The majority goes on to hold that, as a matter of law, Canas did not suffer any new injury as a result of any subsequent acts of malpractice because the deterioration in his condition was the inevitable result of his previously misdiagnosed illness. However, given that the initial injury in a misdiagnosis case is the pain and expense caused by

the untreated condition, the majority opinion overlooks the possibility that there may be a separate injury after a later misdiagnosis, in the form of the continued pain and expense caused by the untreated condition which, but for the later misdiagnosis, would not have occurred. This possible factual scenario renders inappropriate the majority's ruling as a matter of law.

Thus, in holding that subsequent misdiagnoses may constitute new acts of negligence resulting in new injury, the Court of Appeals merely recognized that, as the majority acknowledges, it is possible for a doctor to misdiagnose a patient more than once in the course of treatment, where new or more severe symptoms would, under the relevant standard of care, require a reassessment of the initial diagnosis.[1] The Court of Appeals did not, as the majority contends, effectively revive the continuing treatment doctrine, which effects an *extension* of the statute of limitation with respect to the *initial* diagnosis. See *Young v. Williams*, 274 Ga. 845, 846 (560 SE2d 690) (2002). Instead, the Court of Appeals simply held that a *new* act of negligence, with its concomitant *new* injury, carries with it a *new* limitations period.[2] Likewise, the Court of Appeals did not undermine "the long-standing interpretation given to the term 'injury' as it appears in OCGA § 9-3-71 (a)." Maj. Op., p. 837. None of the cases cited by the majority in support of its narrow interpretation squarely addressed the issue presented in this case, that is, whether, where the patient's symptoms change or worsen so dramatically as to render the physician's continued failure to properly diagnose the patient an independent act of negligence, such subsequent misdiagnosis may be deemed to give rise to a new "injury" in the form of additional pain, suffering, and expense suffered after the subsequent misdiagnosis.

The majority justifies its notion of the single, indivisible injury as fostering "[s]tability and certainty" in the law by fixing an easily determinable date on which the statute of limitations in a misdiagnosis case will begin. Maj. Op., p. 836. However, merely because the Court of Appeals' holding might make it more difficult for medical malpractice defendants to obtain dismissal on statute of limitations

---

[1] This factual situation is distinguishable from that where the doctor simply fails to correct a prior misdiagnosis, the validity of which was never called into serious question by additional or enhanced symptoms. For this reason, the Court of Appeals' holding does not conflict with this Court's decision, cited by the majority, in *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804 (273 SE2d 16) (1980), in which we held that the mere failure to correct a prior act of negligence was not, under the facts presented, a new act of negligence giving rise to a new claim with a new limitations period. Id. at 806 (1). Nothing in *Jankowski* precludes our holding that subsequent instances occurring in a series of negligent acts may give rise to new actionable claims.

[2] Thus, the majority's assertion that under the Court of Appeals' approach, "the statute of limitations will not commence until the error in the original diagnosis is discovered," Maj. Op., p. 835, is simply incorrect.

grounds does not mean that it fosters unpredictability in the law. Moreover, curtailing the rights of the injured in the name of stability in the law is misguided where, as here, neither the letter nor the intent of the statute in question requires such a harsh result.

In sum, I would hold that in those cases where a subsequent misdiagnosis is not merely a continuation of/failure to remedy a prior misdiagnosis but is instead (because of new or more severe symptoms that under the applicable standard of care would require a re-evaluation of the prior diagnosis) a distinct negligent act in its own right, a new injury, i.e., additional pain, suffering, and expense due to the untreated condition, has occurred, giving rise to an independent cause of action for negligence accruing on the date of the subsequent misdiagnosis. This is precisely what the Court of Appeals held, and, therefore, I would affirm.[3]

I am authorized to state that Chief Justice Sears and Justice Thompson join in this dissent.

DECIDED OCTOBER 29, 2007 —
RECONSIDERATION DENIED DECEMBER 14, 2007.

*Scherffius, Ballard, Still & Ayres, William L. Ballard, Michael G. Regas II, Smith Moore, J. Robert Persons*, for Canas.

*Oliver, Maner & Gray, Leslie P. Sheehan, William P. Franklin, Jr., Christopher L. Ray*, for Al-Jabi.

*Carlock, Copeland, Semler & Stair, Adam L. Appel, Kim M. Ruder*, for Kaminer.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Bryan F. Dorsey*, for Board of Regents of the University System of Georgia.

*Hull, Towill, Norman, Barrett & Salley, James S.V. Weston*, for MCG Health, Inc.

*Temple Sellers, Donald J. Palmisano, Jr., Owen, Gleaton, Egan, Jones & Sweeney, H. Andrew Owen, Jr., Roger E. Harris, Shannon C. Shipley, Huff, Powell & Bailey, Daniel J. Huff, Pope & Howard, J. Marcus E. Howard, Charles M. Cork III*, amici curiae.

---

[3] Because under this holding only negligent acts occurring within two years of the filing of the complaint would be potentially actionable, the five-year statute of repose, OCGA § 9-3-71 (b), would not prevent the pursuit of claims based on such acts.