**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 17, 2014**

# In the Court of Appeals of Georgia

A14A0947. BEAMON et al. v. MAHADEVAN.                    DO-049

DOYLE, Presiding Judge.

Charles and Teddy Beamon appeal from the grant of summary judgment to Dr. Chalam Mahadevan in their medical malpractice suit against him following Charles's coronary artery bypass surgery. The Beamons contend that the trial court erred by (1) applying an incorrect starting date for the two-year statute of limitation for Charles's medical malpractice claim and (2) applying the wrong statute of limitation to Teddy's loss of consortium claim. For the reasons that follow, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all

reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record shows that on October 16, 2007, Charles went to the doctor for what he thought was severe indigestion, and based on the results of an electrocardiogram, he was immediately sent to the hospital. Doctors there determined that Charles needed cardiac bypass surgery and a mitral valve replacement. On October 24, 2007, Mahadevan performed a four-vessel coronary artery bypass and mitral valve replacement. The Beamons allege that during the surgery Mahadevan negligently replaced Charles's poorly performing mitral valve with a bioprosthetic one that was undersized for the application. The Beamons also allege that the valve was negligently sutured into leaflet tissue as opposed to the proper tissue, the annulus of the heart.

By March 2008, Charles had begun experiencing troubling shortness of breath, deep fatigue, and exhaustion during routine tasks such as walking to the mailbox. He also experienced lower extremity swelling that had never occurred before. Over the next several months, Charles continued to experience symptoms, and according to his

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

deposition testimony, "it just seemed like all my energy and everything was deteriorating more." His symptoms continued to worsen, and by June 2008, he was experiencing dizziness and "a lot of chest pains" and was diagnosed with atrial fibrillation and a heart murmur.

In March 2009, after suffering continued symptoms, Charles underwent a transesophageal echocardiogram that showed a significant heart valve leak. The next week, Charles underwent surgery to replace the existing 27-millimeter bioprosthetic valve with a 31-millimeter one. During the surgery, the surgeon observed that the first replacement valve had not been sutured properly to the heart's annulus tissue.

In December 2010, the Beamons sued the original surgeon, Mahadevan, later voluntarily dismissing the complaint and filing a renewal action in October 2011, seeking damages for medical malpractice and loss of consortium. Mahadevan answered, and following discovery, Mahadevan moved for summary judgment on statute of limitation grounds. Following a hearing, the trial court granted Mahadevan's motion as to both claims, ruling that the date of the injury to Charles was the October 2007 surgery, so his December 2010 complaint was time barred by the two-year statute of limitation for medical malpractice claims. The Beamons now appeal.

1. The Beamons contend that the trial court erred by ruling that the date of the first surgery, October 24, 2007, was the date on which the two-year statute of limitation began. Instead, they argue that the injury was the subsequent failure of the improperly sized and implanted valve, and they offer March 24, 2009, the date of the second surgery, as the proper starting point.

Under OCGA § 9-3-71 (a), "an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." "In most cases of negligent treatment [such as this one] . . . the statute of limitation for medical malpractice will begin running at the time of the treatment . . . . That is the time that the injury generally occurs."[2] "The true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result."[3]

The undisputed facts before us reveal a scenario where Charles sought surgical treatment for a heart condition and received a treatment (allegedly improper placement of an undersized heart valve) that he contends was negligent. Thus, it was

---

[2] *McCord v. Lee*, 286 Ga. 179, 180 (684 SE2d 658) (2009).

[3] (Punctuation omitted.) *Kaminer v. Canas*, 282 Ga. 830, 833 (1) (653 SE2d 691) (2007), quoting *Allrid v. Emory Univ.*, 249 Ga. 35, 36 (1) (a) (285 SE2d 521) (1982).

4

the initial October 2007 surgery that gave rise to Charles's cause of action, not the March 2009 surgery to correct it, as the Beamons argue.[4] Further, by Charles's own testimony, his injury began manifesting itself from March to June 2008, when he experienced extreme fatigue, shortness of breath, swelling in lower extremities, severe chest pain, dizziness, and atrial flutter.[5] His symptoms never abated, and by this time at the latest, Charles had suffered an injury and could have maintained his action to a successful result by showing a breach of the standard of care by

---

[4] See *Baskette v. Atlanta Center for Reproductive Medicine*, 285 Ga. App. 876, 878 (1) (648 SE2d 100) (2007) (in a case in which frozen sperm were prematurely thawed, the injury occurred on the date of thawing, not the date the plaintiffs learned of the thawing). See also *McCord*, 286 Ga. at 180.

[5] See, e.g., *Witherspoon v. Aranas*, 254 Ga. App. 609, 613 (2) (b) (562 SE2d 853) (2002) (statute of limitations began to run at the time symptoms from a surgical injury began manifesting themselves to plaintiff), overruled on other grounds by *Chandler v. Opensided MRI of Atlanta, LLC*, 299 Ga. App. 145, 157 (682 SE2d 165) (2009); *Henry v. Med. Center*, 216 Ga. App. 893, 894 (2) (456 SE2d 216) (1995) (physical precedent only) ("The fact that [the plaintiff] did not know the medical *cause* of her suffering did not affect the application of OCGA § 9-3-71 (a) when her own evidence established that her injury had occurred and had physically manifested itself to her" more than two years prior to the filing of her complaint.) (punctuation omitted). See also *Miller v. Kitchens*, 251 Ga. App. 225, 228 (c) (553 SE2d 300) (2001) (in a surgical malpractice case, the statute of limitation begins to run upon injury, not upon discovery of the injury; the discovery rule is limited to misdiagnosis claims).

Mahadevan in the first surgery.[6] Because this was more than two years prior to his December 2010 complaint, the trial court correctly ruled that Charles's medical malpractice action was time barred under OCGA § 9-3-71 (a).[7]

2. Teddy contends that the trial court erred by ruling that her loss of consortium claim is time barred as well, arguing that such claims are subject to the four-year time limit in OCGA § 9-3-33.[8] But this ignores OCGA § 9-3-34, which states that the article containing OCGA § 9-3-33 "shall not apply to actions for medical

---

[6] See *Kaminer*, 282 Ga. at 833 (1); *Deen v. Pounds*, 312 Ga. App. 207, 210 (1) (718 SE2d 68) (2011) ("the relevant date is when [the plaintiff] developed drug-induced [symptoms because] that was the injury" from a negligent prescription); *Witherspoon v. Aranas*, 254 Ga. App. 609, 614 (2) (b) (562 SE2d 853) (2002) ("In most medical malpractice actions, the injury 'occurs' when its symptoms manifest themselves to the patient, and this rule applies even if the patient is not aware of either the cause of the pain or of the connection between the symptoms and the negligent act or omission."), overruled on other grounds by *Chandler v. Opensided MRI of Atlanta, LLC*, 299 Ga. App. 145, 157 (2) (b) (682 SE2d 165) (2009).

[7] See *Baskette*, 285 Ga. App. at 878 (1); *Miller*, 251 Ga. App. at 225 (a) ("The statute of limitation commences to run in a medical malpractice case upon injury caused by an act or omission in deviation from the standard of care and attaches after two years from such date and not from discovery of the injury.").

[8] See generally *Huntington v. Fishman*, 212 Ga. App. 27, 28 n. 1 (441 SE2d 444) (1994) (noting that a loss of consortium claim is derivative of liability to a spouse, but the fact that the statute of limitations has run on the underlying claim is of no consequence to the viability of the derivative loss of consortium claim), citing *Parrotte v. Christian*, 208 Ga. App. 823 824 (2) (432 SE2d 255) (1993).

6

malpractice." Thus, "plaintiffs bringing loss of consortium actions which arise out of medical malpractice have only two years in which to file their claims."[9] Accordingly, this enumeration is without merit.

*Judgment affirmed. Miller and Dillard, JJ., concur.*

---

[9] *Perry v. Atlanta Hospital & Med. Center, Inc.*, 255 Ga. 431, 432 (339 SE2d 264) (1986), citing *Hamby v. Neurological Assoc., P. C.*, 243 Ga. 698 (256 SE2d 378) (1979). See also *Price v. Currie*, 260 Ga. App. 526, 530 (3) (580 SE2d 299) (2003) (physical precedent only) ("The applicable statute of limitation for a consortium claim in a medical malpractice action is two years, not four."). The Beamons cite as support *Jones v. Lamon*, 206 Ga. App. 842, 846-847 (2) (426 SE2d 657) (1992), a medical malpractice loss of consortium case which incorrectly relied on a personal injury case, *Elwell v. Haney*, 169 Ga. App. 481, 482 (313 SE2d 499) (1984), to hold that the statute of limitation for a loss of consortium claim based on medical malpractice is four years instead of two. The analysis in *Jones* does not account for OCGA § 9-3-34, but it is not binding precedent because less than a majority of the voting judges fully concurred in the opinion; accordingly, we need not formally overrule it. See Court of Appeals Rule 33 (a).