**WHOLE COURT**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A1085. SMITH et al. v. DANSON et al.

McFADDEN, Judge.

Dominique J. Smith, MD, and her obstetrics and gynecology practice, Premier Women's Healthcare, LLC (collectively, "Smith"), appeal from the trial court's denial of Smith's motion for summary judgment on Laura Woodley Danson's complaint for medical malpractice.[1] That claim arose out of a surgical procedure in which Danson was injured. Smith argues that Danson's complaint was filed after expiration of the two-year statute of limitations for medical-malpractice claims and that the trial court erred by holding otherwise.

---

[1] Danson's husband also made a claim for loss of consortium. Neither the parties on appeal nor the trial court's order discuss his claim.

It is undisputed that the claims arising out of the surgery itself, which Danson asserted in her original complaint, are time barred. But Danson has abandoned those claims. She now asserts only a claim for a subsequent misdiagnosis and takes the position that the injury she suffered during surgery was not the result of negligence but rather a known risk of the procedure. Because the claim she now asserts is a timely free-standing misdiagnosis claim, it is not time barred as a matter of law. Accordingly, we affirm.

Viewed in the light most favorable to Danson as the nonmovant, see, e.g., *Torrance v. Morris Pub. Group LLC*, 281 Ga. App. 563, 566 (1) (636 SE2d 740) (2006) (citation omitted), the record shows that on February 28, 2011, she underwent a laparoscopic complete hysterectomy performed by Smith. Upon waking from the procedure, Smith told Danson that her stomach was hard because the surgical team used "too much gas," which we presume to mean gas injected into the abdomen to inflate the area during the laparoscopic procedure. Danson was discharged from the hospital a day or two later and was scheduled for her first post-operative appointment with Smith on March 16, 2011.

Although Danson initially felt "okay," approximately three days after being discharged she noticed that she lacked an appetite. And when she tried to eat, she had

2

the feeling of already being full. Danson also had pain "in [her] stomach," which "was feeling a little hard." Additionally, she noticed a burning sensation when she urinated. Notwithstanding these symptoms, Danson did not call Smith or any other doctor, attributing her ailments to just having had surgery.

At the first post-operative appointment on March 16, 2011, Smith removed Danson's bandages, and Danson informed Smith that she was experiencing painful urination, that her stomach felt hard and hurt, and that she was having difficulty swallowing. Thereafter, Smith prescribed Danson an antibiotic to treat a probable bladder infection and attributed the other symptoms to using "too much gas" during the procedure. Before leaving Smith's office, Danson scheduled a second post-operative appointment for April 6, 2011.

In the time between her first and second appointments, Danson's symptoms worsened (although the painful urination ceased after taking the prescribed medication). Nevertheless, she did not call Smith or otherwise seek medical assistance during this time period. But at the second post-operative appointment with Smith, Danson discussed her bloated, hard stomach and her worsening pain and difficulty swallowing. Smith then performed an internal examination of Danson, during which she placed her hand on Danson's stomach. After completing this

examination and telling Danson that she was free to go, Danson asked Smith, "[W]hat are we going to do about the gas in my stomach?" In response, Smith asked Danson whether she had made any dietary changes and recommended trying probiotics to relieve symptoms of gas.

Danson tried probiotics and other over-the-counter remedies for gas relief for several weeks before seeking medical assistance elsewhere for her worsening symptoms, which eventually came to include vomiting. In the end, following examinations by multiple doctors other than Smith and a hospital stay, it was discovered that Danson had an obstruction of her kidney, which in turn caused urine to collect internally in her abdomen. According to Danson, when the obstruction was discovered, the diagnosing physician told her that she "had obstruction to [her] kidney . . . during surgery, which was caused during surgery, during the hysterectomy, and [Smith] had clamped down on [Danson's] kidney." Danson claimed that she was also told that Smith had "nicked" her bladder and "messed up." Danson then underwent further surgical treatment to resolve her condition.

On March 14, 2013, Danson filed suit against Smith.[2] In the factual allegations of her complaint, Danson claimed, among other things, that Smith, "[d]uring the surgery . . . placed surgical clapped, [sic] to move Plaintiff's . . . bladder out of the way so Defendant Smith could get to Plaintiff's . . . uterus." She then made a claim for "medical malpractice and negligence," which she supported with allegations that Smith "failed to give informed consent of the risks of the procedure of hysterectomy"; "injured [Danson's] right ureter during the hysterectomy procedure"; "failed to diagnose [Danson's] right ureter injury postoperatively"; and "failed to recognize [Danson's] abdominal distention was due to development of ascites."

Smith answered Danson's complaint, raising the affirmative defense that Danson failed to comply with the two-year statute of limitations for medical-malpractice claims, OCGA § 9-3-71 (a) ("Except as otherwise provided in this article, an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred."). She moved to dismiss and/or for summary judgment on the same basis.

---

[2] Danson originally sued other medical professionals with regard to the care she received in the weeks between her last visit with Smith and her eventual diagnosis, but these defendants were either dismissed by consent or are not parties to this appeal.

In a response brief, Danson admitted that her complaint was filed outside of the two-year limitations period, but claimed for the first time that Smith had also committed fraud by "continuously telling [her] that what she was experiencing was merely gas." Thus, Danson contended that the statute of limitations had been tolled by this alleged fraud. See OCGA § 9-3-96 ("If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitations shall run only from the time of the plaintiff's discovery of the fraud.").

In response to Smith's limitations-period defense, Danson also filed an amended complaint that, in addition to the original claim for medical malpractice/negligence, added a claim for fraud and misrepresentation. She supported this claim with allegations that Smith "knew that the hardening of Plaintiff's abdomen was not caused by gas but by something she did during the surgery" and "knew when she made said statements that they were false and made the same for the purpose of inducing Plaintiff to continue to take the medication for gas and think that her health issues were not related to anything . . . Smith had done during the surgery." (Emphasis omitted).

6

Smith answered Danson's amended complaint, again raising the affirmative defense that Danson failed to comply with the two-year statute of limitations. Smith also responded to Danson's brief in opposition to the motion for summary judgment, asserting that Danson's new claim of fraud could not salvage the belatedly filed complaint because there was no evidence to support such a claim.

Danson then filed a second brief in response to Smith's motion, contending that the statute of limitations began to run on March 16, 2011, when Smith failed to diagnose anything other than gas, so her complaint was not time barred. Danson clarified that she was "not seeking to recover damages for the injury of the bladder but the delay in diagnosis or the misdiagnosis of the bladder injury . . . ." She alternatively argued that Smith's fraud had tolled the running of the limitations period when Danson "was defrauded by Dr. Smith in an effort to prevent [her] from uncovering the errors that Dr. Smith had made will [sic] performing the hysterectomy procedure."

Danson also amended her complaint for a second time, removing from the medical-malpractice/negligence claim the allegation that Smith failed to give informed consent. Danson continued to allege that Smith "injured [Danson's] right ureter during the hysterectomy procedure." She then alleged that Smith "either failed

to diagnose [Danson's] right ureter injury postoperatively or purposely misrepresented the cause of [Danson's] complaints" and "either failed to recognize or purposely misrepresented [that Danson's] abdominal distention was due to development of ascites." Finally, Danson continued to maintain the prior allegations for her claim of fraud.

The trial court conducted a hearing on Smith's motion. The hearing was not transcribed, and accordingly no transcript was transmitted to this court. Following the hearing, Danson took Smith's deposition before both parties filed supplemental briefs on the motion. In Danson's supplemental brief, she pointed to Smith's deposition testimony to support her argument that she did not, in fact, assert a claim for medical malpractice related to the surgery because Smith's testimony established that internal injuries, including to ureters, are a reasonable, possible complication in surgery.

After all of the foregoing transpired, the trial court ruled upon Smith's motion, concluding that, because there was no evidence of fraud and the complaint had been filed outside of the two-year statute of limitations, the complaint should be dismissed. Danson then filed a motion for reconsideration, which the trial court granted in part. As to the claim for fraud, which Danson continued to maintain, the trial court denied the motion to reconsider and maintained the grant of summary judgment to Smith.

But as to a claim for misdiagnosis occurring on March 16, 2011, the trial court granted the motion, determining that Danson made no claim for medical malpractice as it related to the injury allegedly sustained during surgery on February 28, 2011. In so ruling, the court noted that

> Defendant Dr. Smith's contention that the injury to the ureter was a known risk of surgery in the absence of negligence is agreed to. And her contention that there was no negligence in the course of the surgery is unrebutted. So in this case, the issue posed is whether a non-negligent injury may cause the statute of limitations period to run.

In making this partial reversal of the prior decision, the trial court issued a certificate of immediate review, and we granted Smith's application for interlocutory appeal.

Smith contends on appeal that the trial court erred in granting Danson's motion for reconsideration by concluding that the statute of limitations began to run on March 16, 2011, as opposed to February 28, 2011. We disagree.

To begin with, in most cases of negligent treatment, the negligent treatment is the injury and the statute of limitations begins to run at the time of treatment. *McCord v. Lee*, 286 Ga. 179, 180 (684 SE2d 658) (2009). In such cases, a subsequent misdiagnosis by the party that provided the negligent treatment is not a separate injury; and the limitations period for a claim arising from such a misdiagnosis runs

from the date of the original injury. See *Kaminer v. Canas*, 282 Ga. 830, 834 (1) (653 SE2d 691) (2007) (physicians' failure to rediagnose plaintiff's condition was a failure to mitigate damages, not an act inflicting new harm); *Smith v. Harris*, 294 Ga. App. 333, 337-338 (2) (a) (670 SE2d 136) (2008). Cf. *Amu v. Barnes*, 283 Ga. 549 (662 SE2d 113) (2008) (explaining the new injury exception to this rule). But as to claims of free-standing misdiagnosis, the injury is the misdiagnosis, and, in most cases, the limitations period runs from the time of the misdiagnosis. *McCord*, 286 Ga. at 180.

In this case, Danson initially alleged that her surgery was negligently performed but has now disavowed that claim. The trial court correctly found that disavowal effective, so that the statute of limitations began running at the time of the alleged misdiagnosis.

The dissent would hold that Danson never effectively disavowed her claim that Smith committed medical malpractice while performing the surgical procedure. This is so, the dissent reasons, because the alleged misdiagnosis is inextricably linked to the injury she claims to have sustained during surgery, both in how she pleaded the claim and as a matter of fact. Consequently, the dissent would hold, the statute of limitations began running at the time of the surgery.

We disagree. "A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order." OCGA § 9-11-15 (a). As she had the right to do, Danson amended her complaint to remove her former claim that Smith committed malpractice during the surgery. It is irrelevant to our analysis that her amended complaint contradicts her initial complaint. Id. Indeed under some circumstances, when their understanding of the evidence changes, parties should reverse themselves.

The dissent characterizes Danson's amendment as an attempt to "salvage her complaint." To the extent that that characterization implies disapproval, we disagree. It is not our place, at least under these facts, to judge a party's tactics.

As the dissent argues, Danson still alleges in her second amended complaint that Smith injured her during the surgical procedure. But this allegation does not mean that Smith alleged the injury amounted to malpractice. The fact that a plaintiff suffers an unintended injury, particularly one that is a known risk such as the injury here, does not amount to medical malpractice, absent a breach of the standard of care. See *Zarate-Martinez v. Echemendia*, 332 Ga. App. 381, 387-388 (3) (772 SE2d 826) (2015).

11

Danson's intent to abandon the claim that Smith was negligent during the surgery is clear. In the amended brief Danson filed in opposition to the defendants' motion to dismiss or for summary judgment, Danson expressly disavows that she is asserting malpractice for the surgical injury. Treating Danson's pleadings with "considerable indulgence" as we must given that she is the nonmovant, *Gentile v. Bower*, 222 Ga. App. 736, 737 (477 SE2d 130) (1996), we conclude that Danson effectively amended her complaint to remove the claim that Smith committed medical malpractice during the surgery, despite her allegation that Smith injured her during surgery. See *Smith v. Morris, Manning & Martin*, 264 Ga. App. 24 (589 SE2d 840) (2003) (physical precedent only on other grounds) (plaintiff properly amended complaint to remove claims of malpractice that would otherwise be barred for lack of malpractice affidavit and to substitute claims of intentional misconduct). See also *Stith v. Hudson*, 231 Ga. 520, 525 (2) (202 SE2d 392) (1973) (a party may amend the complaint by striking all of the original pleadings and asserting new claims).

Instead, Danson alleges as the first act of negligence that Smith failed to diagnose the cause of her symptoms. Because this was the first time Danson experienced an "injury . . . arising from a negligent or wrongful act or omission," Danson had to bring her action for medical malpractice within two years of that date.

12

OCGA § 9-3-71 (a). And since Danson filed her complaint within two years of this alleged failure to diagnose, it follows that her complaint is timely.

*Judgment affirmed. Barnes, P. J., Ellington, P.J., and Phipps, P. J., concur. Dillard and Ray, JJ., dissent. McMillian, J., concurs in the judgment only of the dissent.*

A15A1085. SMITH et al. v. DANSON et al.

DILLARD, Judge, dissenting.

I respectfully dissent. The majority holds that Danson has abandoned her time-barred claim for medical malpractice related to the surgery performed on February 28, 2011. I disagree. And because Danson filed her complaint more than two years after the date that her complained-of injury occurred, her claims were time-barred as a matter of law. Thus, summary judgment should have been granted to Smith, and the trial court erred in granting Danson's motion for reconsideration from its initial dismissal of the complaint.

The majority opinion correctly recites the allegations made in Danson's initial pleadings, the arguments in Smith's motion for summary judgment, and the various responses. Nevertheless, the majority is untroubled by the repeated contradictions within Danson's pleadings and responses. Indeed, in Danson's second brief in

response to Smith's motion for summary judgment, Danson contends that the statute of limitation began to run on March 16, 2011, when Smith failed to diagnose anything other than gas. But notwithstanding Danson's supposed clarification that she was "not seeking to recover damages for the injury of the bladder but the delay in diagnosis or the misdiagnosis of the bladder injury . . . ," she inexplicably admits, yet again, that the complaint was filed outside of the two-year statute of limitation period. And Danson then reprises her argument that Smith's fraud tolled the running of the limitation period when she "was defrauded by Dr. Smith in an effort to prevent [her] from uncovering *the errors* that Dr. Smith had made will [sic] performing the hysterectomy procedure."[1]

Additionally, in Danson's second amended complaint, in which she removes the allegation that Smith failed to give informed consent, she continues to allege in her medical-malpractice/negligence claim that Smith "injured [her] right ureter during the hysterectomy procedure." Danson also alleges that Smith "either failed to diagnose [Danson's] right ureter injury postoperatively or purposely misrepresented the cause of [Danson's] complaints" and "either failed to recognize or purposely misrepresented [Danson's] abdominal distention was due to development of ascites."

---

[1] Emphasis supplied.

2

And, of course, in this complaint, Danson continues to maintain the prior allegations for her claim of fraud.

Then, following the untranscribed hearing on Smith's motion, Danson took Smith's deposition before both parties filed supplemental briefs on the motion. Smith's supplemental brief represents that "[a]t the hearing, [Danson] argued that the deposition of Dr. Smith was needed in order to defend against the [m]otion, primarily, to prove fraud in order *to avoid dismissal due to the filing after the expiration of the statute of limitation*."[2] And Danson did not respond to or counter this assertion in her supplemental brief, which was filed over one week later.

Despite these rampant contradictions and repeated allegations of an injury sustained during surgery, the majority believes the trial court properly granted Danson's motion for reconsideration by concluding that the statute of limitation began to run on March 16, 2011, as opposed to February 28, 2011. I disagree.

To begin with, the purpose of a statute of limitation is "to limit the time period in which certain types of actions may be brought and thereby provide a date certain after which potential defendants can no longer be held liable for claims brought in

---

[2] Emphasis supplied.

such actions."[3] In this respect, a statute of limitation serves "the legitimate public policy goal of promoting justice and furthering the certainty of time limitations while preventing unfair surprise";[4] and prescribing these periods of limitation is, of course, "a legislative, not a judicial, function[.]"[5]

OCGA § 9-3-71 contains the relevant limitation period for actions for medical malpractice, providing that such actions "shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred."[6] In Georgia an "action for medical malpractice" is any claim for damages that result from "the death of or injury to any person arising out of[ ] . . . [h]ealth, medical, dental, or surgical service, diagnosis, prescription, treatment, or care

---

[3] *U.S. Fid. & Guar. Co. v. Rome Concrete Pipe Co., Inc.*, 256 Ga. 661, 662 (353 SE2d 15) (1987); *see also Young v. Williams*, 274 Ga. 845, 847 (560 SE2d 690) (2002).

[4] *Martin v. Herrington Mill, Inc.*, 316 Ga. App. 696, 701 (730 SE2d 164) (2012) (punctuation omitted); *accord Walker v. Brannan*, 243 Ga. App. 235, 239 (533 SE2d 129) (2000).

[5] *Young*, 274 Ga. at 847; *see also Kaminer v. Canas*, 282 Ga. 830, 838 (4) (653 SE2d 691) (2007) ("We find OCGA § 9-3-71 (a) to be an extremely harsh limitation in application because it has the effect, in many cases, . . . of cutting off rights before there is any knowledge of injury. Nonetheless, the legislature has the power, within constitutional limitations, to make such provisions." (punctuation omitted)).

[6] OCGA § 9-3-71 (a).

4

rendered by a person authorized by law to perform such services or by any person acting under the supervision and control of a lawfully authorized person . . . ."[7]

In most cases of negligent treatment or misdiagnosis, "the statute of limitation for medical malpractice will begin running at the time of the treatment or misdiagnosis."[8] Thus, in cases of alleged negligent treatment, "the statute of limitation for medical malpractice will begin running at the time of the treatment,"[9] which is "the time that the injury generally occurs."[10] But in cases of misdiagnosis, "the two-year statute of limitation[ ] and the five-year statute of repose begin to run simultaneously on the date that the doctor negligently failed to diagnose the condition and, thereby, injured the patient."[11] In sum, our Supreme Court has concluded that

---

[7] OCGA § 9-11-8 (a) (1) (A).

[8] *McCord v. Lee*, 286 Ga. 179, 180 (684 SE2d 658) (2009).

[9] *Beamon v. Mahadevan*, 329 Ga. App. 685, 687 (1) (766 SE2d 98) (2014) (punctuation omitted) (quoting *McCord*, 286 Ga. at 180).

[10] *Id.* (punctuation omitted) (quoting *McCord*, 286 Ga. at 180).

[11] *Kaminer*, 282 Ga. at 832 (1); *see also id.* at 831-32 (1) (holding that in cases of misdiagnosis, "the injury begins immediately upon the misdiagnosis due to pain, suffering, or economic loss sustained by the patient from the time of the misdiagnosis until the medical problem is properly diagnosed and treated" and that "[t]he misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis" (punctuation omitted)); *Frankel v. Clark*, 213 Ga. App. 222, 223 (444 SE2d 147) (1994).

5

"[t]he true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result."[12]

Here, Smith presented evidence that Danson's medical-malpractice claim was time-barred when Danson filed suit for medical malpractice on March 14, 2013, and *repeatedly* supported her claim by asserting that, in addition to later failing to diagnose the error, Smith *injured* Danson during surgery on February 28, 2011. In response to Smith's assertion that the claims were time-barred, Danson initially attempted to show that the statute of limitation had been tolled by fraud when she asserted that Smith *knew* she had injured Danson during surgery but concealed her error by continuously diagnosing Danson with gas. Then, Danson later attempted to salvage her complaint by contending that it did not contain an allegation of malpractice based upon an injury sustained during surgery but instead only made a claim for misdiagnosis. But notwithstanding this contention, Danson continued to maintain that Smith committed fraud, which tolled the statute of limitations. Thus, Danson's argument on appeal, which the majority accepts, is belied by the allegations contained in every single one of her complaints and subsequent filings.

---

[12] *Kaminer*, 282 Ga. at 833 (1) (punctuation omitted); *accord Beamon*, 329 Ga. App. at 687 (1).

Indeed, under the Civil Practice Act, "any pleading which sets forth a claim for relief . . . shall contain[ ] . . . [a] short and plain statement of the claims showing that the pleader is entitled to relief . . . ."[13] Additionally, all averments of a claim must be made in numbered paragraphs, "the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances."[14] And each claim that is "founded upon a separate transaction or occurrence . . . shall be stated in a *separate count . . .* whenever a separation facilitates the clear presentation of the matters set forth."[15] Here, in each of her three complaints, Danson asserts a claim for medical malpractice supported by averments that Smith injured Danson's right ureter *during the hysterectomy.*[16]

---

[13] OCGA § 9-11-8 (a) (2) (A).

[14] OCGA § 9-11-10 (b).

[15] *Id.* (emphasis supplied).

[16] *Cf. Johnson v. Jones*, 327 Ga. App. 371, 375-76 (2) (759 SE2d 252) (2014) (holding that trial court properly found that claim was time-barred when the gravamen of claim for breach of fiduciary duties was an alleged failure to correctly read an ultrasound and reach proper diagnosis, and accordingly, the claim "amounted to a claim of negligence that went to the propriety of [the defendant's] medical skill and judgment").

The trial court, in granting Danson's motion for reconsideration and denying summary judgment to Smith on the claim for medical malpractice, appears to have concluded that Danson's complaint did not assert a claim for malpractice based upon anything that occurred during the surgery. And, of course, the majority reaches this same conclusion. For its part, the trial court's order noted that Danson's expert-affidavit[17] did not "state that the injury to the ureter was negligent" and that Smith's "contention that there was no negligence in the course of the surgery is unrebutted." But these are different considerations from whether or not Danson, in her complaint, *asserted* a claim of medical malpractice for an injury allegedly sustained during the surgery.[18] Nevertheless, the majority maintains that "[t]he fact that a plaintiff suffers

[17] *See* OCGA § 9-11-9.1 (a) ("In any action for damages alleging professional malpractice . . . the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim.").

[18] *See* OCGA § 9-11-9.1 (e) ("If a plaintiff files an affidavit which is allegedly defective, and the defendant to whom it pertains alleges, with specificity, by motion to dismiss filed on or before the close of discovery, that said affidavit is defective, the plaintiff's complaint shall be subject to dismissal for failure to state a claim . . . ."); OCGA § 9-11-56 (c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law; but nothing in this Code section shall be construed as denying to any party the right to trial by jury

an unintended injury, particularly one that is a known risk such as the injury here, does not amount to medical malpractice, absent a breach of the standard of care." But a review of Danson's expert-affidavit, which largely tracked the exact language of the complaint, shows that the affiant opined, *inter alia*, that Smith "injured [Danson's] right ureter during the hysterectomy procedure on February 28, 2011" and then "failed to diagnose [Danson's] right ureter injury post operatively."

In conclusion, it is manifestly evident from a review of each of Danson's complaints that she made (and continued to make) a claim for medical malpractice based upon allegations that Smith injured her *during* the February 28, 2011 surgery. Thus, the statute of limitation had already expired when she filed her initial complaint on March 14, 2013—two years and eleven days after the date that she sustained the injury.[19] Danson's assertion of a claim for medical malpractice based upon a failure to diagnose the injury she received *during the surgery* could not salvage her complaint. Indeed, her claim as to an alleged misdiagnosis is inextricably linked to

---

where there are substantial issues of fact to be determined. A summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damage.").

[19] *See* OCGA § 9-3-71 (a) ("[A]n action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred.").

9

the injury she claims to have sustained during surgery—both in terms of how she singularly pleaded the claim[20] and as a matter of fact.[21] And as our Supreme Court has explained, "the statute of limitations on a medical malpractice claim . . . begins on the date of the patient's *injury*."[22]

---

[20] *See* OCGA § 9-11-10 (b) (providing that "[e]ach claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth").

[21] *Cf. Deen v. Pounds*, 312 Ga. App. 207, 211 (1) (718 SE2d 68) (2011) (holding that there was "no evidence in the record to support [appellant's] contention that [the doctor] committed a separate act of negligence by continuing to prescribe Reglan" and that "[the doctor's] alleged failure to correct any previous negligence does not constitute additional acts of negligence" (punctuation omitted)); *Goodman v. Satilla Health Servs.*, 290 Ga. App. 6, 8 (658 SE2d 792) (2008) (holding that there was "no evidence in the record to support [appellant's] contention that [the doctor] committed a separate act of negligence by continuing to prescribe Coumadin" and that "[the doctor's] alleged failure to correct any previous negligence does not constitute additional acts of negligence").

[22] *Kaminer*, 282 Ga. at 834 (1) (citation omitted) (emphasis supplied); *see also Young*, 274 Ga. at 847 ("While Georgia had such a medical malpractice statute of limitation from 1976-1985, the period of limitation under the current statute begins with the occurrence of an injury, not the performance of a negligent act."). *Cf. Lyon v. Schramm*, 291 Ga. App. 48, 49 (661 SE2d 178) (2008) ("[U]nlike the statute of limitation, the [medical malpractice] statute of repose begins to run when an act of negligence is committed."), *affirmed by Schramm v. Lyon*, 285 Ga. 72 (673 SE2d 241) (2009).

Accordingly, for all of the foregoing reasons, I would reverse the trial court's grant of Danson's motion for reconsideration and direct the court to grant summary judgment in favor of Smith.

I am authorized to state that Judge Ray joins in this dissent and Judge McMillian concurs in the judgment only of this dissent.

11

A15A1085. SMITH et al. v. DANSON et al.

McMILLIAN, Judge, concurring in the judgment only of the dissent.

Although I agree with the result reached by Judge Dillard in his dissenting opinion, I cannot agree with all that is said and thus concur in the judgment only to that opinion.[1] See Court of Appeals Rule 33 (a).

---

[1] The judgment line "concurring in the judgment only of the dissent" first appeared in our cases in 1980 and has been used occasionally since that time. See *Ellis v. Dalton*, 194 Ga. App. 114 (389 SE2d 797) (1989); *Harvey Freeman & Sons, Inc. v. Stanley*, 189 Ga. App. 256 (375 SE2d 261) (1988); *Travillian v. Ga. Farm Bureau Mut. Ins. Co.*, 182 Ga. App. 241 (355 SE2d 677 (1987); *Howard v. Superior Contractors*, 180 Ga. App. 68 (348 SE2d 563) (1986); *Menchio v. Rymer*, 179 Ga. App. 852 (348 SE2d 76) (1986); *Johnson v. Amerson*, 179 Ga. App. 75 (345 SE2d 94) (1986); *Taylor v. Greiner*, 156 Ga. App. 663 (275 SE2d 737) (1980).