**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**January 22, 2014**

# In the Court of Appeals of Georgia

A13A1897. MCALLISTER v. THE STATE.                    DO-071 C

DOYLE, Presiding Judge.

Daniel J. McAllister was arrested and charged with driving under the influence with an unlawful blood alcohol level ("DUI per se")[1]; driving under the influence while less safe to do so ("DUI less safe")[2]; and failure to maintain his lane.[3] McAllister filed a motion to suppress the results of his blood alcohol test, arguing that the warrant acquired for the blood draw was invalid based on his previous refusal to

---

[1] OCGA § 40-6-391 (a) (5).

[2] OCGA § 40-6-391 (a) (1).

[3] OCGA § 40-6-48.

submit to testing under Georgia's Implied Consent Law. The trial court denied his motion, and this appeal followed.[4] For the reasons that follow, we affirm.

First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[5]

So viewed, the evidence presented at the hearing on the motion to suppress establishes that Officer Daniel Higgins of the Cherokee County Sheriff's office was manning a vehicle safety checkpoint on March 30, 2012. Approximately 500 feet before the roadblock, signs alerted drivers to have their license ready, and the drivers were detained for only a few seconds if the officers did not detect any violations.

Deputy George Rose, a post-certified officer trained in detecting intoxicated drivers, testified that he was standing at the checkpoint at approximately 10:35 p.m.,

---

[4] The trial court issued a certificate of immediate review on March 21, 2013.

[5] (Punctuation omitted.) *Brown v. State*, __ Ga. __ (3) (b) (2) (Case No. S12G1287, decided Oct. 21, 2012), quoting *Miller v. State*, 288 Ga. 286 (1) (702 SE2d 888) (2010).

guiding traffic with his flashlight, when he witnessed a white Cadillac approach the checkpoint. The vehicle's left turn signal was activated, and as it approached him, Deputy Rose noticed the vehicle's passenger side tires twice cross over the middle line dividing the lanes of traffic. McAllister stopped his vehicle beside Deputy Rose, and he inquired about what was happening, to which inquiry Rose responded by asking whether McAllister had seen the bright orange "checkpoint" signs indicating that drivers should have their licenses ready to present.

Deputy Rose noticed that McAllister was nervous while speaking and that his eyes were red and glassy. McAllister's speech was slurred and vacillated from being overly slow to speeding up, he seemed generally confused, and he had to pause before answering the deputy's questions. After asking McAllister for his license twice, Deputy Rose noted that he fumbled with his wallet to produce it. The deputy also detected the odor of alcoholic beverage emanating from the vehicle, but McAllister stated he had not had anything to drink that evening.

Thereafter, in order to conduct further investigation without impeding traffic, Deputy Rose asked McAllister to pull off to the side of the road, indicating a spot directly in front of the deputy; however, McAllister traveled well past the spot, to the

point at which the deputy had to yell for him to stop. McAllister slammed on his brakes, and after stepping out of the car, he appeared unsteady on his feet.

Deputy Rose began performing several field sobriety evaluations, including the horizontal gaze nystagmus, during which the deputy observed six out of six clues for impairment. McAllister, however, stated that he had spinal problems, so Deputy Rose did not perform the walk and turn or one-leg stand evaluations; McAllister also stated that "medical problems" would prevent him from completing the Romberg Evaluation, which consisted of silently counting to 30. McAllister then became uncooperative when Deputy Rose attempted to perform other evaluations of him, and at that point, based on the totality of his observations of McAllister, Deputy Rose arrested him for driving under the influence.

Deputy Rose read McAllister the implied consent warning for individuals 21 and over, and McAllister refused to submit to chemical testing. The deputy placed McAllister in a patrol car and transported him to the local jail, where the deputy completed an application for a warrant for a blood test of McAllister. Deputy Rose presented his warrant application in person to a local magistrate, who signed it, and thereafter, McAllister was transported to a local hospital for a blood draw, the results of which established a blood alcohol level of 0.127 grams.

4

At the conclusion of the suppression hearing, the trial court denied McAllister's motion, finding that a valid search warrant could be used to acquire a blood sample for the purpose of procuring evidence of intoxication even if, like here, a defendant previously refused to submit to testing pursuant to the implied consent law. This appeal followed.

1. McAllister first argues that the trial court erred by finding that the search warrant was valid because he had refused testing under OCGA § 40-5-67.1, and therefore, the officer was prohibited from applying for a warrant. We disagree.

In 2005, the Georgia Supreme Court addressed such an argument regarding the implied consent law in effect at that time, and the Court determined that

> [u]nder the . . . law, the consequences of refusing the requested testing are the possibility of admission of such refusal at a criminal trial as well as suspension of the driver's license. These legislatively-created sanctions do not include being compelled to submit to testing through the use of a search warrant. Otherwise, the right of refusal under the implied consent law would be rendered meaningless. The prohibition against forced testing is not altered by the fact that the investigating officer might have the probable cause necessary to support the issuance of a search warrant. Inasmuch as the implied consent law contemplates

5

arrest, the presence of probable cause that the individual was operating a motor vehicle in violation of OCGA § 40-6-391 is a prerequisite.[6]

Had OCGA § 40-5-67.1 remained as written at that time, then McAllister could not have his blood drawn pursuant to the warrant. In 2006, however, the Legislature amended OCGA § 40-5-67.1, adding subsection (d.1), which states that "[n]othing in this Code section shall be deemed to preclude the acquisition or admission of evidence of a violation of Code Section 40-6-391 if obtained by voluntary consent or a search warrant as authorized by the Constitution or laws of this [S]tate or the United States."[7] The plain meaning of this language and its addition to OCGA § 40-5-67.1 on the heels of the Supreme Court's decision in *Collier* support the State's argument that the search warrant used to take McAlliser's blood was valid under the implied consent statute.[8]

---

[6] (Citations omitted.) *State v. Collier*, 279 Ga. 316, 317-318 (612 SE2d 281) (2005).

[7] See Ga. L. 2006, p. 329, § 2.

[8] See *McMullen v. State*, 316 Ga. App. 684, 693-694 (3) (a), n.42 (730 SE2d 151) (2012), citing *Reeves v. Upson Regional Med. Center*, 315 Ga. App. 582, 586 (2) (726 SE2d 544) (2012) ("[W]hen we consider the meaning of a statute, we always must presume that the General Assembly means what it says and says what it means, and an unambiguous statute must be afforded its plain meaning.") (citation and punctuation omitted)); *In the Interest of L. J.*, 279 Ga. App. 237, 238 (630 SE2d 771)

While McAllister asserts that this reading of the statute renders meaningless the language of OCGA § 40-5-67.1 (d): "no test shall be given" if a driver refuses to submit to chemical testing after an officer reads the implied consent notice, his argument is without merit. The Legislature's addition of Subsection (d.1) clarified that this language applies only to warrantless chemical tests given by the State in the event that a driver has refused such testing after the implied consent warning. Practically speaking, the language to which McAllister points also is not meaningless simply because the State may now apply for a warrant to perform the test because it is only a possibility, and in the face of a refusal the officer must be able to present sufficient evidence of probable cause to a magistrate in order to obtain a warrant for the test. Thus, if the officer does not have sufficient cause to obtain the warrant, then no warrant could be issued and such a test will not be authorized.

Accordingly, this enumeration is without merit, and the trial court did not err by denying McAllister's motion to suppress evidence on this ground.

---

(2006) ("[When] the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly."). Cf. *Williams v. State*, 297 Ga. App. 626, 627-628 (677 SE2d 773) (2009) (addressing the retroactive effect of this subsection and determining that the amendment constituted a substantive change thereby preventing retroactive application).

2. McAllister also contends that as applied, the statutory scheme in the amended OCGA § 40-5-67.1 (d.1) violated his right to due process. Specifically, McAllister contends that Deputy Rose's failure to explain that he could still obtain a search warrant in order to force chemical testing during his explanation of the implied consent law resulted in a violation of McAllister's right to due process.

McAllister raised this constitutional issue in his amended motion to suppress, but McAllister did not raise this issue at the hearing on the motion to suppress nor did the trial court explicitly rule on it in its order denying the motion. Thus, McAlister failed to obtain a distinct ruling on the constitutional issue, and therefore, this enumeration presents nothing for this Court to review.[9]

Accordingly, the trial court did not err by denying McAllister's motion to suppress the result of his blood alcohol test obtained by a warrant after he declined to submit to chemical testing pursuant to the implied consent statute.

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[9] See *City of Decatur v. DeKalb County*, 284 Ga. 434, 436 (1) (668 SE2d 247) (2008). Compare with *Rouse v. Dept. of Natural Resources*, 271 Ga. 726, 727-728 (1) (524 SE2d 455) (1999).