**FIRST DIVISION**
**PHIPPS, C. J.,**
**DOYLE, P. J, and BOGGS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 20, 2015**

# In the Court of Appeals of Georgia

A15A0501. ZARATE-MARTINEZ v. ECHEMENDIA et al.          DO-024

DOYLE, Presiding Judge.

Olga Zarate-Martinez filed a medical malpractice complaint against Dr. Michael Echemendia and related health care entities ("the Defendants") seeking damages for injuries she sustained as a result of an allegedly negligent tubal ligation. The trial court granted the Defendants' motion to strike Zarate-Martinez's expert affidavit and dismissed her complaint on the ground that she failed to comply with OCGA § 9-11-9.1 because the expert affiant did not qualify under OCGA § 24-7-702 (c). Zarate-Martinez appeals, contending that the trial court erred because (1) affiant Nancy Hendrix, M.D., met the requirements of Code section 702, (2) witness Charles Ward, M.D., also met the requirements of Code section 702, (3) other evidence in the record created fact questions and established the "pronounced results" exception to

the requirement for expert testimony, and (4) OCGA § 24-7-702 (c) (2) (A) and (B) are unconstitutional. Finding no reversible error, we affirm.

The complaint alleged that Dr. Echemendia was Zarate-Martinez's physician for several years, and on April 24, 2006, Dr. Echemendia performed an out-patient open laporoscopic tubal ligation procedure on Zarate-Martinez. Zarate-Martinez went home on the same day of the surgery. Over the next few days, Zarate-Martinez developed increasing pain, nausea, and fever. On April 28, 2006, Zarate-Martinez went to the emergency room, was admitted to the hospital, and underwent an exploratory laparotomy, which determined that the lower portion of Zarate-Martinez's small intestine was perforated. The perforation was surgically repaired, and she remained in the hospital for further treatment until May 6, 2006.

On March 31, 2008, Zarate-Martinez sued Echemendia, Atlanta Womens's Health Group, P.C., (and LLC), and North Crescent Surgery Center, LLC, alleging that Dr. Echemendia negligently performed the tubal ligation and perforated her small intestine. Along with the complaint, Zarate-Martinez filed an affidavit from Errol Jacobi, M.D., purporting to comply with the expert affidavit requirement in OCGA

§ 9-11-9.1 (a).[1] On December 14, 2010, the Defendants moved to strike the testimony of Dr. Jacobi and another expert identified by Zarate-Martinez, Dr. Ward, and for summary judgment. Following a response and supplemental response by Zarate-Martinez, the trial court granted the motion to strike both experts' testimony on the ground that they did not qualify under OCGA § 24-7-702 (c). Instead of dismissing the case or entering judgment in favor of the Defendants, the trial court allowed Zarate-Martinez an additional 45 days to identify a competent expert witness.[2] That order was signed on January 28, 2013, and filed February 21, 2013.

On April 2, 2013, Zarate-Martinez filed an affidavit of Nancy Hendrix, M.D., and after the Defendants moved to strike that affidavit, Zarate-Martinez filed a supplemental affidavit of Dr. Hendrix on May 24, 2013. Following a hearing, on July 17, 2014, the trial court granted the motion to strike both of Dr. Hendrix's affidavits on the ground that they did not demonstrate adequate qualifications under OCGA §

---

[1] OCGA § 9-11-9.1 (a) provides, in relevant part, that in medical malpractice actions, "the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim."

[2] See OCGA § 9-11-9.1 (e) (authorizing trial court to allow a plaintiff to timely cure her defective pleading under certain conditions). Zarate-Martinez does not challenge the trial court's ruling that Dr. Jacobi was unqualified to testify in this case.

3

24-7-702 (c). In light of Zarate-Martinez's failure to fulfill the expert affidavit requirement in OCGA § 9-11-9.1 (a), the trial court dismissed her complaint. She now appeals.

1. Zarate-Martinez contends that the trial court erred because Dr. Hendrix's affidavit and supplemental affidavit demonstrate that she met the requirements of OCGA § 24-7-702 (c).[3] We disagree.[4]

OCGA § 24-7-702 (c) provides, in relevant part:

> Notwithstanding the provisions of subsection (b) of this Code section and any other provision of law which might be construed to the contrary, in professional malpractice actions, the opinions of an expert, who is otherwise qualified as to the acceptable standard of conduct of the professional whose conduct is at issue, shall be admissible only if, at the time the act or omission is alleged to have occurred, such expert:

---

[3] "[B]ecause OCGA § 24-7-702 is 'substantively identical' to its predecessor statute, former OCGA § 24-9-67.1, cases decided under the former statute offer useful guidance when analyzing the current version of the statute." *Dempsey v. Gwinnett Hosp. System*, 330 Ga. App. 469, 471, n. 3 (765 SE2d 525) (2014).

[4] The trial court considered Dr. Hendrix's supplemental affidavit despite the Defendants' objection that it was not filed within the 45-day time limit allowed by the order granting their motion to strike. In light of our ruling affirming the trial court's analysis of the substance of that affidavit, we need not consider whether that affidavit was untimely.

4

(1) Was licensed by an appropriate regulatory agency to practice his or her profession in the state in which such expert was practicing or teaching in the profession at such time; and

(2) In the case of a medical malpractice action, had actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given *as the result of having been regularly engaged in*:

(A) *The active practice of such area of specialty of his or her profession for at least three of the last five years, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in performing the procedure*, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue; *or*

(B) *The teaching of his or her profession for at least three of the last five years as an employed member of the faculty of an educational institution accredited in the teaching of such profession, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in teaching others how to perform the procedure*, diagnose the condition, or render the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue. . . .[5]

---

[5] (Emphasis supplied.)

If an expert's affidavit fails to meet the requirements of OCGA § 24-7-702 (c), the affidavit is insufficient, and the complaint is subject to dismissal.[6] Because the trial court conducted a hearing under OCGA § 24-7-702 (d) to determine the expert affiant's competence to testify, the court's determination on this issue is reviewed on appeal for abuse of discretion.[7]

Here, Dr. Hendrix's initial affidavit purported to satisfy the "active practice" requirement in subsection (c) (2) (A) by including the following statements:

> I practice in the specialty of obstetrics/gynecology, and completed my residency in the OB/GYN Department of the Medical College of Georgia in 1998. . . I am in private practice [and] admitted to practice in Maryland [and] . . . Georgia . . . .
>
> An open laparoscopic tubal ligation is the procedure performed by Dr. Echemendia . . . Dr. Echemendia's performance in handling the procedure is the subject of my opinion stated in my affidavit.
>
> I regularly practiced for more than 5 years before the performance of the tubal ligation performed by Dr. Echemendia in this case. As a medical student, intern, and gynecological resident I studied and learned the physiology of the female, the common and uncommon problems

---

[6] See *Craigo v. Azizi*, 301 Ga. App. 181, 182 (1) (687 SE2d 198) (2009).

[7] See id. at 182-183 (1).

associated with the female physiology and pathology, and treatment generally accepted by the medical profession for problems requiring surgery. One of the surgical procedures taught to me was the tubal ligation, . . . and the precautions necessary to be taken to prevent injury to the patient. . . As part of my active practice, I have [published] an article . . . titled "Sterilization and its Consequences . . . ." I performed open laparoscopies on patients over the course of years of my internship, residency, and private practice, and am experienced in the procedure.

Dr. Hendrix's supplemental affidavit[8] stated as follows, in relevant part:

By the former statement referring to "open laparoscopies" I was referring to tubal ligations employing the "open laparoscopy" method used in performance of the tubal ligation. This is the method Dr. Echemendia used, and this is a method I used in many tubal ligations which I have performed for patients over the course of my active private practice, including performing many tubal ligations each of the 5 years before the "open laparoscopy" tubal ligation Dr. Echemendia performed on Olga Zarate-Martinez on April 24, 2006. I have experience and knowledge of the tubal ligation including open laparoscopies. . . My use of "open laparoscopies" in the original affidavit referred to tubal ligations. My use of "open laparoscopies" in the last sentence of the above [quoted] paragraph[9] referred to the same method of tubal ligation employed by Dr. Echemendia.

---

[8] Because the trial court considered both affidavits, we do as well.

[9] This is the same as the immediately preceding quoted paragraph in this opinion.

I was in active practice, . . . and performed tubal ligations many times in each of the last five years prior to the tubal ligation performed on Ms. Zarate on April 24, 2006. . . .

The trial court held that, even after considering the supplemental affidavit, Dr. Hendrix's affidavits did not meet the standard in OCGA § 24-7-702 (c) (2) (A). The trial court observed that the original affidavit only stated that Dr. Hendrix "performed open laparoscopies on patients," without explaining which type of open laparoscopy procedure and without quantifying the number of open laparoscopic tubal ligation procedures she had performed over the relevant time period. The trial court noted that "[o]pen laparoscopy is not a surgery itself– it is a surgical technique . . . used for numerous gynecological surgeries, not just tubal ligations, and for other types of abdominal surgeries, including bariatric surgeries." Based on this record, the trial court did not abuse its discretion by finding that merely stating that a doctor has performed a procedure, without more specificity as to frequency or type, is insufficient under section 702 (c) (2) (A).[10]

---

[10] See, e.g., *Akers v. Elsey*, 294 Ga. App. 359, 362 (2) (670 SE2d 142) (2008). This language was carried over into the current Code from the Tort Reform Act of 2005, which was adopted "to help reduce the cost of liability insurance for health care providers and ensure citizens continued access to care . . . [, and more specifically] was part of the legislature's effort to impose more exacting requirements on expert

With respect to the supplemental affidavit, the trial court held that it did not adequately address the first affidavit's deficiencies. The trial court noted that the supplemental affidavit stated that Dr. Hendrix "performed tubal ligations many times in each of the last five years prior to" Zarate-Martinez's surgery. But the court explained that the term "many" was too vague: "the Court has no idea what the term 'many' means and cannot, therefore, assess whether Dr. Hendrix has the 'appropriate level of knowledge. . . .'"

As we noted above, section 702 (c) (2) (A) provides that expert testimony in a medical malpractice case is admissible "only if" the expert can demonstrate having been regularly engaged in the active practice "for at least three of the last five years, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in performing the procedure."

Here, the essence of Dr. Hendrix's supplemental affidavit is that she performed "many [open laparoscopic] tubal ligations each of the 5 years before the" procedure at issue. Absent further clarity as to what Dr. Hendrix meant by "many," the trial court was within its discretion to rule that the affidavit failed to demonstrate an

witnesses in medical malpractice cases." *Hankla v. Postell*, 293 Ga. 692, 695-696 (749 SE2d 726) (2013).

appropriate level of knowledge in performing the procedure in three of the five years prior to the Zarate-Martinez's procedure. The statute is explicit that the "appropriate level of knowledge" is to be "determined by the trial judge," and the trial court noted that it had no reliable way to gauge the affiant's concept of "many" in the context of Zarate-Martinez's burden under section 702. In light of the vagueness of the affidavit, we discern no abuse of the trial court's discretion in granting the motion to strike Dr. Hendrix's affidavit.[11]

2. Zarate-Martinez next contends that the trial court erred by granting the Defendants' motion to strike the testimony of Dr. Ward on the ground that he could not meet the requirement of section 702 (c) (2) (B). The record shows that Dr. Ward was identified by the plaintiffs as an expert, and he was deposed by the Defendants, but he never submitted an affidavit in support of the complaint in accordance with OCGA § 9-11-9.1 (a). The requirement in OCGA § 9-11-9.1 (a) is plain: "the plaintiff shall be required to file with the complaint an affidavit of an expert competent to

---

[11] See *Akers*, 294 Ga. App. at 362 (2) (affirming motion to exclude expert testimony because the expert "simply averred that he had practiced general surgery within the previous five years and had 'performed many' [of the relevant] laparoscopic procedures"); *Nathans v. Diamond*, 282 Ga. 804, 807 (1) (654 SE2d 121) (2007) (affidavit failed to show that witness had personally practiced the particular conduct at issue "with sufficient frequency to establish appropriate level of knowledge").

testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." Absent a timely filed affidavit from Dr. Ward purporting to meet that requirement, Dr. Ward's qualifications are not material to this appeal.

3. Zarate-Martinez also argues that the trial court erred by dismissing her case because (a) there was other evidence from the Defendants' experts that created fact questions, and (b) the "pronounced results" exception obviated the affidavit requirement in OCGA § 9-11-9.1 (a).

(a) *Other evidence*. Zarate-Martinez points to certain statements made by expert witnesses identified by the Defendants which allegedly create fact questions as to causation and a breach of the standard of care. But this overlooks the mandatory language of OCGA § 9-11-9.1 (a) requiring plaintiffs to file affidavits with their complaints. "The purpose of OCGA § 9-11-9.1 is to reduce the number of frivolous malpractice suits being filed, not to require a plaintiff to prove a prima facie case entitling him to recover and capable of withstanding a motion for summary judgment before the defendant need file his answer."[12] Thus, because Zarate-Martinez did not

---

[12] (Punctuation omitted.) *Bowen v. Adams*, 203 Ga. App. 123, 124 (416 SE2d 102) (1992).

satisfy the affidavit requirement, any argument about factual disputes arising elsewhere in the record is misplaced.

(b) *"Pronounced results" exception*. This exception refers to those

exceedingly rare cases wherein the medical questions presented concern matters which a jury can be credited with knowing by reason of common knowledge or the possibility of actionable medical negligence appears so clearly from the record that the plaintiff-patient need not produce expert medical testimony concerning the applicable standard of care to avoid summary judgment for a defendant-doctor testifying as to his own lack of negligence.[13]

For example, when a physician punctured a patient's lung while intending only to give a shoulder injection for pain relief, this Court held that "expert testimony [was not] necessary to establish a prima facie case of medical malpractice and submission of the case to a jury" was authorized on the record without further expert testimony.

But Zarate-Martinez has failed to cite to any case holding that the statutory requirement for an expert affidavit in OCGA § 9-11-9.1 (a) is obviated in such a case, and we decline to so hold here. The General Assembly adopted OCGA § 9-1-9.1 (a)

---

[13] *Killingsworth v. Poon*, 167 Ga. App. 653, 656 (307 SE2d 123) (1983).

as a *pleading* requirement, which operates separate and apart from the evidentiary burden on summary judgment and at trial.

Furthermore, there is evidence in the record that the injury alleged here, while unintended, is a "known risk" and "recognized complication" of a tubal ligation In light of this and the facts alleged, we conclude that this is not one of the "exceedingly rare" cases in which a jury could determine whether the standard of care was breached simply by common knowledge.[14]

4. Zarate-Martinez finally contends that the trial court erred by striking the expert affidavits because OCGA § 24-7-702 (c) (2) is unconstitutional. But appellate courts will "not reach constitutional questions which have not been considered and distinctly ruled on by the trial court."[15] Zarate-Martinez challenges OCGA § 24-7-702 (c) (2) on the grounds that it denied her right to a jury trial, denied her equal protection of the laws, violated the separation of powers, and was a "special law" not

---

[14] Cf. *Nelson v. Parrott*, 175 Ga. App. 307 (1) (333 SE2d 307) (1985) (unwanted pregnancy resulting from failed sterilization was a known risk and not subject to the pronounced results exception).

[15] (Punctuation omitted.) *East Ga. Land & Dev. Co. v. Baker*, 286 Ga. 551, 555 (6) (690 SE2d 145) (2010).

13

of a general nature. While these arguments were presented to the trial court, the trial court, in a footnote, stated only that

> Zarate-Martinez challenges the constitutionality of Section 702. "[T]he constitutionality of a statute is presumed, and . . . all doubts must be resolved in favor of its validity." *Albany Surgical, P.C. v. Ga. Dept. of Community Health*, 278 Ga. 366, 368, 602 SE2d 648, 51 (2004). *Daubert* has survived constitutionality challenges, and the Court declines to hold that Section 702 violates due process requirements or is otherwise unconstitutional.

Whereas the *Daubert* rule is codified in section 702 (b), Zarate-Martinez's challenges are to the provisions in section 702 (c), which are not found in *Daubert*. Accordingly, the trial court, by generally presuming section 702 to be valid, did not announce a distinct ruling on the challenged subsection, nor did it address the particular constitutional arguments advanced on appeal. Even if some other constitutional issue was considered, "[b]ecause neither the trial court's discussion nor its written order mention the . . . issue[s challenged on appeal], it does not appear that such issue[s] [were] distinctly ruled on by the trial court. Accordingly, [they are] not preserved for appeal."[16]

---

[16] (Punctuation omitted.) Id. at 556 (6). See also *McAllister v. State*, 325 Ga. App. 583, 586 (2) (754 SE2d 376) (2014) (failure to obtain distinct ruling on

14

*Judgment affirmed. Phipps, C. J., and Boggs, J., concur.*



constitutional challenge to a statute precludes appellate review).