MCFADDEN, Judge.
Dominique J. Smith, M.D., and her obstetrics and gynecology practice, Premier Women’s Healthcare, LLC (collectively, “Smith”), appeal from the trial court’s denial of Smith’s motion for summary judgment on Laura Woodley Danson’s complaint for medical malpractice.[1] That claim arose out of a surgical procedure in which Danson was injured. Smith argues that Danson’s complaint was filed after expiration of the two-year statute of limitation for medical malpractice claims and that the trial court erred by holding otherwise.
It is undisputed that the claims arising out of the surgery itself, which Danson asserted in her original complaint, are time barred. *866 But Danson has abandoned those claims. She now asserts only a claim for a subsequent misdiagnosis and takes the position that the injury she suffered during surgery was not the result of negligence but rather a known risk of the procedure. Because the claim she now asserts is a timely free-standing misdiagnosis claim, it is not time barred as a matter of law. Accordingly, we affirm.
Viewed in the light most favorable to Danson as the nonmovant, see, e.g., Torrance v. Morris Publishing Group, 281 Ga. App. 563, 566 (1) (636 SE2d 740) (2006), the record shows that on February 28, 2011, she underwent a laparoscopic complete hysterectomy performed by Smith. Upon waking from the procedure, Smith told Danson that her stomach was hard because the surgical team used “too much gas,” which we presume to mean gas injected into the abdomen to inflate the area during the laparoscopic procedure. Danson was discharged from the hospital a day or two later and was scheduled for her first post-operative appointment with Smith on March 16, 2011.
Although Danson initially felt “okay,” approximately three days after being discharged she noticed that she lacked an appetite. And when she tried to eat, she had the feeling of already being full. Danson also had pain “in [her] stomach,” which “was feeling a little hard.” Additionally, she noticed a burning sensation when she urinated. Notwithstanding these symptoms, Danson did not call Smith or any other doctor, attributing her ailments to just having had surgery.
At the first post-operative appointment on March 16, 2011, Smith removed Danson’s bandages, and Danson informed Smith that she was experiencing painful urination, that her stomach felt hard and hurt, and that she was having difficulty swallowing. Thereafter, Smith prescribed Danson an antibiotic to treat a probable bladder infection and attributed the other symptoms to using “too much gas” during the procedure. Before leaving Smith’s office, Danson scheduled a second post-operative appointment for April 6, 2011.
In the time between her first and second appointments, Danson’s symptoms worsened (although the painful urination ceased after taking the prescribed medication). Nevertheless, she did not call Smith or otherwise seek medical assistance during this time period. But at the second post-operative appointment with Smith, Danson discussed her bloated, hard stomach and her worsening pain and difficulty swallowing. Smith then performed an internal examination of Danson, during which she placed her hand on Danson’s stomach. After completing this examination and telling Danson that she was free to go, Danson asked Smith, “[W]hat are we going to do about the gas in my stomach?” In response, Smith asked Danson whether she *867 had made any dietary changes and recommended trying probiotics to relieve symptoms of gas.
Danson tried probiotics and other over-the-counter remedies for gas relief for several weeks before seeking medical assistance elsewhere for her worsening symptoms, which eventually came to include vomiting. In the end, following examinations by multiple doctors other than Smith and a hospital stay, it was discovered that Danson had an obstruction of her kidney, which in turn caused urine to collect internally in her abdomen. According to Danson, when the obstruction was discovered, the diagnosing physician told her that she “had obstruction to [her] kidney . . . during surgery, which was caused during surgery, during the hysterectomy, and [Smith] had clamped down on [Danson’s] kidney.” Danson claimed that she was also told that Smith had “nicked” her bladder and “messed up.” Danson then underwent further surgical treatment to resolve her condition.
On March 14, 2013, Danson filed suit against Smith.[2] In the factual allegations of her complaint, Danson claimed, among other things, that Smith, “[d]uring the surgery... placed surgical clapped, [sic] to move Plaintiff’s ... bladder out of the way so Defendant Smith could get to Plaintiff’s... uterus.” She then made a claim for “medical malpractice and negligence,” which she supported with allegations that Smith “failed to give informed consent of the risks of the procedure of hysterectomy”; “injured [Danson’s] right ureter during the hysterectomy procedure”; “failed to diagnose- [Danson’s] right ureter injury postoperatively”; and “failed to recognize [Danson’s] abdominal distention was due to development of ascites.”
Smith answered Danson’s complaint, raising the affirmative defense that Danson failed to comply with the two-year statute of limitation for medical malpractice claims, OCGA § 9-3-71 (a) (“Except as otherwise provided in this article, an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred.”). She moved to dismiss and/or for summary judgment on the same basis.
In a response brief, Danson admitted that her complaint was filed outside of the two-year limitation period, but claimed for the first time that Smith had also committed fraud by “continuously telling [her] that what she was experiencing was merely gas.” Thus, Danson contended that the statute of limitation had been tolled by this *868 alleged fraud. See OCGA § 9-3-96 (“If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff’s discovery of the fraud.”).
In response to Smith’s limitation-period defense, Danson also filed an amended complaint that, in addition to the original claim for medical malpractice/negligence, added a claim for fraud and misrepresentation. She supported this claim with allegations that Smith “knew that the hardening of Plaintiff’s abdomen was not caused by gas but by something she did during the surgery” and “knew when she made said statements that they were false and made the same for the purpose of inducing Plaintiff to continue to take the medication for gas and think that her health issues were not related to anything... Smith had done during the surgery.” (Emphasis omitted.)
Smith answered Danson’s amended complaint, again raising the affirmative defense that Danson failed to comply with the two-year statute of limitation. Smith also responded to Danson’s brief in opposition to the motion for summary judgment, asserting that Danson’s new claim of fraud could not salvage the belatedly filed complaint because there was no evidence to support such a claim.
Danson then filed a second brief in response to Smith’s motion, contending that the statute of limitation began to run on March 16, 2011, when Smith failed to diagnose anything other than gas, so her complaint was not time barred. Danson clarified that she was “not seeking to recover damages for the injury of the bladder but the delay in diagnosis or the misdiagnosis of the bladder injury . . . .” She alternatively argued that Smith’s fraud had tolled the running of the limitation period when Danson “was defrauded by Dr. Smith in an effort to prevent [her] from uncovering the errors that Dr. Smith had made will [sic] performing the hysterectomy procedure.”
Danson also amended her complaint for a second time, removing from the medical malpractice/negligence claim the allegation that Smith failed to give informed consent. Danson continued to allege that Smith “injured [Danson’s] right ureter during the hysterectomy procedure.” She then alleged that Smith “either failed to diagnose [Danson’s] right ureter injury postoperatively or purposely misrepresented the cause of [Danson’s] complaints” and “either failed to recognize or purposely misrepresented [that Danson’s] abdominal distention was due to development of ascites.” Finally, Danson continued to maintain the prior allegations for her claim of fraud.
The trial court conducted a hearing on Smith’s motion. The hearing was not transcribed, and accordingly no transcript was transmitted to this court. Following the hearing, Danson took Smith’s deposition before both parties filed supplemental briefs on the motion. *869 In Danson’s supplemental brief, she pointed to Smith’s deposition testimony to support her argument that she did not, in fact, assert a claim for medical malpractice related to the surgery because Smith’s testimony established that internal injuries, including to ureters, are a reasonable, possible complication in surgery.
After all of the foregoing transpired, the trial court ruled upon Smith’s motion, concluding that, because there was no evidence of fraud and the complaint had been filed outside of the two-year statute of limitation, the complaint should be dismissed. Danson then filed a motion for reconsideration, which the trial court granted in part. As to the claim for fraud, which Danson continued to maintain, the trial court denied the motion to reconsider and maintained the grant of summary judgment to Smith. But as to a claim for misdiagnosis occurring on March 16, 2011, the trial court granted the motion, determining that Danson made no claim for medical malpractice as it related to the injury allegedly sustained during surgery on February 28, 2011. In so ruling, the court noted that
Defendant Dr. Smith’s contention that the injury to the ureter was a known risk of surgery in the absence of negligence is agreed to. And her contention that there was no negligence in the course of the surgery is unrebutted. So in this case, the issue posed is whether a non-negligent injury may cause the statute of limitations period to run.
In making this partial reversal of the prior decision, the trial court issued a certificate of immediate review, and we granted Smith’s application for interlocutory appeal.
Smith contends on appeal that the trial court erred in granting Danson’s motion for reconsideration by concluding that the statute of limitation began to run on March 16,2011, as opposed to February 28, 2011. We disagree.
To begin with, in most cases of negligent treatment, the negligent treatment is the injury, and the statute of limitation begins to run at the time of treatment. McCord v. Lee, 286 Ga. 179, 180 (684 SE2d 658) (2009). In such cases, a subsequent misdiagnosis by the party that provided the negligent treatment is not a separate injury; and the limitation period for a claim arising from such a misdiagnosis runs from the date of the original injury. See Kaminer v. Canas, 282 Ga. 830, 835 (1) (653 SE2d 691) (2007) (physicians’ failure to rediagnose plaintiff’s condition was a failure to mitigate damages, not an act inflicting new harm); Smith v. Harris, 294 Ga. App. 333, 337-338 (2) (a) (670 SE2d 136) (2008). Cf. Amu v. Barnes, 283 Ga. 549 (662 SE2d 113) (2008) (explaining the new injury exception to this rule). But as *870 to claims of free-standing misdiagnosis, the injury is the misdiagnosis, and, in most cases, the limitation period runs from the time of the misdiagnosis. McCord, 286 Ga. at 180.
In this case, Danson initially alleged that her surgery was negligently performed but has now disavowed that claim. The trial court correctly found that disavowal effective, so that the statute of limitation began running at the time of the alleged misdiagnosis.
The dissent would hold that Danson never effectively disavowed her claim that Smith committed medical malpractice while performing the surgical procedure. This is so, the dissent reasons, because the alleged misdiagnosis is inextricably linked to the injury she claims to have sustained during surgery, both in how she pleaded the claim and as a matter of fact. Consequently, the dissent would hold, the statute of limitation began running at the time of the surgery.
We disagree. “A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order.” OCGA § 9-11-15 (a). As she had the right to do, Danson amended her complaint to remove her former claim that Smith committed malpractice during the surgery. It is irrelevant to our analysis that her amended complaint contradicts her initial complaint. Id. Indeed under some circumstances, when their understanding of the evidence changes, parties should reverse themselves.
The dissent characterizes Danson’s amendment as an attempt to “salvage her complaint.” To the extent that that characterization implies disapproval, we disagree. It is not our place, at least under these facts, to judge a party’s tactics.
As the dissent argues, Danson still alleges in her second amended complaint that Smith injured her during the surgical procedure. But this allegation does not mean that Smith alleged the injury amounted to malpractice. The fact that a plaintiff suffers an unintended injury, particularly one that is a known risk such as the injury here, does not amount to medical malpractice, absent a breach of the standard of care. See Zarate-Martinez v. Echemendia, 332 Ga. App. 381, 387-388 (3) (772 SE2d 826) (2015).
Danson’s intent to abandon the claim that Smith was negligent during the surgery is clear. In the amended brief Danson filed in opposition to the defendants’ motion to dismiss or for summary judgment, Danson expressly disavows that she is asserting malpractice for the surgical injury. Treating Danson’s pleadings with “considerable indulgence” as we must given that she is the nonmovant, Gentile v. Bower, 222 Ga. App. 736, 737 (477 SE2d 130) (1996), we conclude that Danson effectively amended her complaint to remove the claim that Smith committed medical malpractice during the surgery, despite her allegation that Smith injured her during surgery. *871 See Smith v. Morris, Manning & Martin, 264 Ga. App. 24 (S89 SE2d 840) (2003) (physical precedent only on other grounds) (plaintiff properly amended complaint to remove claims of malpractice that would otherwise be barred for lack of malpractice affidavit and to substitute claims of intentional misconduct). See also Stith v. Hudson, 231 Ga. 520, 525 (2) (202 SE2d 392) (1973) (a party may amend the complaint by striking all of the original pleadings and asserting new claims).
Instead, Danson alleges as the first act of negligence that Smith failed to diagnose the cause of her symptoms. Because this was the first time Danson experienced an “injury... arising from a negligent or wrongful act or omission,” Danson had to bring her action for medical malpractice within two years of that date. OCGA § 9-3-71 (a). And since Danson filed her complaint within two years of this alleged failure to diagnose, it follows that her complaint is timely.
Judgment affirmed.

Barnes, P. J., Ellington, P. J., and Phipps, P. J., concur. Dillard and Ray, JJ., dissent. McMillian, J., concurs in the judgment only of the dissent.

 Danson’s husband also made a claim for loss of consortium. Neither the parties on appeal nor the trial court’s order discuss his claim.

 Danson originally sued other medical professionals with regard to the care she received in the weeks between her last visit with Smith and her eventual diagnosis, but these defendants were either dismissed by consent or are not parties to this appeal.